PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3459
_____


YING CHEN;
QIANG CHEN,
                    Petitioners
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent
_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A075-710-413 & A089-252-003)
Immigration Judge: Honorable Henry S. Dogin
_____


Argued February 14, 2011

Before:  SLOVITER, HARDIMAN and
ALDISERT, *Circuit Judges*

(Opinion filed March 18, 2011)
_____


Yee Ling Poon   (Argued)
Law Offices of Yee Ling Poon, LLC
New York, New York 10038

     Attorney for Petitioners

Jacob A. Bashyrov
Linda Y. Cheng
Katharine Clark   (Argued)
Eric H. Holder, Jr.
Thomas W. Hussey
United States Department of Justice
Office of Immigration Litigation
Civil Division
Washington, D.C. 20044

     Attorneys for Respondent

_____

OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

Ying Chen and her husband Qiang Chen (collectively, "petitioners") seek review of a final removal order entered by the Board of Immigration Appeals ("BIA").  At issue is the frequently encountered issue of asylum for the Chinese parents of American born children whose birth exceeds the maximum under China's population control rules.

Mr. Chen, a native and citizen of China, Fujian Province, entered the United States in 1996 without inspection.  Ms. Chen, also from China, Fujian Province, entered in 2003 without inspection.  The couple married here in 2005 and have had two sons, born in 2005 and 2008, both United States citizens.  In 2008, after the Department of Homeland Security served Notices to Appear, petitioners conceded their removability before an Immigration Judge ("IJ").  They applied for asylum, withholding of removal, Convention Against Torture ("CAT") relief, and, alternatively, voluntary departure.  Petitioners – principally Ms. Chen, the lead applicant and sole witness to testify before the IJ – claim that they fear persecution upon return to China

2

for having violated the one-child policy in that Ms. Chen will be forcibly sterilized and/or face economic persecution.[1]

The IJ denied relief. Among other things, the IJ found that Ms. Chen's stated desire to have a third child upon return to China is speculative, and that, under the holding in *Matter of J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007), she failed to show a well-founded fear that she would be forcibly sterilized upon returning with her two United States citizen children. The IJ also denied withholding of removal and found no evidence showing a likelihood that Ms. Chen will be subjected to torture upon return.

Petitioners filed a motion with the IJ to reopen the record and for reconsideration. They submitted an affidavit from an aunt of Ms. Chen, who stated that she was forcibly sterilized upon returning to China with two children that she had while in Japan. The IJ denied petitioners' motion, noting that they had ample opportunity to present all evidence at the merits hearing, and that the evidence from the aunt was available and could have been presented previously.

The BIA affirmed and dismissed petitioners' appeal, finding that petitioners failed to show an objective, well-founded fear of persecution. The BIA agreed with the IJ that petitioners do not warrant asylum based on the birth of their two children, and it rejected petitioners' efforts to distinguish their case from *Matter of J-W-S-*. The BIA rejected, in particular, the argument that petitioners' children will be considered Chinese citizens for purposes of enforcing population control policy. The BIA also affirmed the IJ's decision to reject, for lack of authentication, a letter that Ms. Chen's mother purportedly had obtained from the local Village Committee which indicated that Ms. Chen would be sterilized upon return. Further, the BIA found no evidence to support petitioners' claim that they may suffer economic persecution, and it held that Ms. Chen had failed to show that

---

[1] Ms. Chen also claimed before the IJ that she fears that the Chinese government will persecute her for having left illegally with help from a smuggler, but she has not pursued that contention before this Court.

3

she is likely to be tortured, either because she gave birth to two children or because she illegally emigrated. Finally, the BIA denied petitioners' request for a remand so that the IJ could consider evidence regarding the aunt's sterilization, holding that the IJ properly refused to reopen the proceedings to consider evidence that was previously available. Petitioners timely filed a petition for review in this Court.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). Our review is of the BIA's decision, although we also review the IJ's decision to the extent that the BIA adopted or deferred to the IJ's analysis. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). "We review factual findings, including findings of persecution and fear of persecution, under the substantial evidence standard." *Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009). "Under this deferential standard, findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation marks omitted).

Petitioners argue that Ms. Chen established that her fear of future persecution is well-founded. They contend that the BIA and the IJ engaged in "generic reliance" on the holding in *Matter of J-W-S-* and failed to consider evidence showing that petitioners' children will be treated as Chinese citizens, which gives rise to their fear that Ms. Chen will be sterilized or subjected to onerous fines for having had more than one child. Petitioners' Br. at 24.

The BIA's recent opinion in *Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209 (BIA 2010), contains a comprehensive discussion that persuasively addresses many of the issues before us. This court has not previously considered in a precedential opinion the BIA's latest view of this issue.

The respondents there, like the Chens here, were natives and citizens of China who hailed from the Fujian Province and had two United States citizen children. *Id.* at 210. They claimed that if they returned to China, and specifically the Fujian Province, the female respondent would be subject to forced sterilization as well as a significant fine. *Id.* The IJ agreed and granted the respondent's application for

4

asylum. *Id.* The BIA vacated the opinion of the IJ, concluding that the respondent had not shown that she possessed a well-founded fear of forcible sterilization or other sanctions rising to the level of persecution. *Id.* at 218.

In doing so, the BIA noted that State Department reports on country conditions, including the *Profiles of Asylum Claims & Country Conditions*, are "highly probative evidence and are usually the best source of information on conditions in foreign nations." *Id.* at 213. With respect to the discussion of forced sterilization in China and Fujian Province in particular, in the May 2007 *China: Profile of Asylum Claims and Country Conditions* ("2007 Profile"), the BIA stated:

> Although acknowledging that there were "reportedly" forced sterilizations in Fujian in 2006, the State Department observes that Consulate General officials visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization. In interviews with visa applicants from Fujian representing a wide cross-section of society, Consulate General officers have noted that many violators of the one-child policy paid fines, but they found no evidence of forced abortion or property confiscation. According to the Fujian Provincial Birth Planning Committee, there have been no cases of forced abortion or sterilization in Fujian in the last 10 years.

*Id.* at 214 (internal citations omitted).

Similarly, with respect to the 2007 Profile discussion regarding the economic sanctions that might be imposed, the BIA stated: [2]

---

[2] Although here the Government at oral argument acknowledged that the 2007 Profile was not submitted into evidence, we agree that the BIA considered the 2007 Profile by citing to *Matter of J-W-S-* and did not err in doing so. The BIA may take administrative notice of official documents prepared by the Department of State, such as the 2007 Profile.

The State Department's *2007 Profile* indicates that an economic penalty in the form of a social compensation fee may be imposed upon a birth planning violator. However, the respondent has not met her burden of establishing that payment of such a fee would put her at such a "severe economic disadvantage" that it would amount to persecution. The *2007 Profile* indicates that there is wide variation in the amount of social compensation fees and the severity of hardship they impose for out-of-plan births. It also notes that couples unable to pay the fee immediately may be allowed to pay in installments.

*Id.* at 216 (internal citations omitted).

In sum, the BIA in *Matter of H-L-H- & Z-Y-Z-* concluded that the evidence presented "indicates that physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and that the overall policy is much more heavily reliant on incentives and economic penalties." *Id.* at 218. With regard to those incentives and penalties, the BIA held that "the respondent has not shown that her locality represents a current exception to the general rules in which the Chinese Government relies on a variety of measures short of persecution to enforce its population control policy." *Id.*

With *Matter of H-L-H- & Z-Y-Z-* in mind, we find substantial evidence in the record here to support the denial of asylum. To establish eligibility for asylum, petitioners had to prove either past persecution (which they have not claimed) or "a well-founded fear of future persecution on account of a statutorily enumerated ground." *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 107 (3d Cir. 2010). A "well-founded fear" must be both subjectively and objectively reasonable. *Id.* at 108. To establish objective reasonableness, petitioners must show that "a reasonable person in the alien's circumstances would fear persecution if returned to [China]."

---

8 C.F.R. § 1003.1(d)(3)(iv); BIA: Procedural Reforms to Improve Case Mgmt., 67 Fed. Reg., 54,878, 54,892 (Aug. 26, 2002).

*Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). "'A person who has a well founded fear that he or she will be forced to abort a pregnancy or undergo involuntary sterilization or is subject to persecution for failure, refusal, or resistance to undergo such a procedure shall be deemed to have a well founded fear of persecution on account of political opinion.'" *Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir. 2008) (alterations omitted) (quoting 8 U.S.C. § 1101(a)(42)(B)).

The BIA agreed with the IJ's analysis and found that the birth of petitioners' two children does not warrant asylum, citing both this Court's decision in *Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir. 2008) (holding that substantial evidence supported determination that petitioners failed to show that fear of sterilization was objectively reasonable), and its own decision in *Matter of J-W-S-*, 24 I. & N. Dec. at 189-90 (rejecting evidence that petitioner had well-founded fear of forcible sterilization based on returning to China with U.S. born children). Contrary to petitioners' suggestion, the BIA and the IJ did not ignore their evidence or fail to conduct a case-specific analysis of the evidence.[3] Moreover, the record

---

[3] Petitioners cite *Zheng*, in support of their argument that the agency's analysis of the evidence was insufficient. In *Zheng*, this Court granted an alien's petition for review where "the BIA did little more than quote passages from its earlier decision in *J-W-S-* without identifying-let alone discussing-the various statements contained in the record before it that [petitioner] submitted in support of his motion to reopen." 549 F.3d at 268. Here, the IJ sufficiently considered the relevant documents and evidence of record. For example, on the central question of whether petitioners' children will be considered Chinese citizens for family planning purposes, the IJ expressly discussed and analyzed the State Department Report, the Law Library of Congress Report, a Chinese passport issued to petitioners' eldest child, evidence regarding China's nationality laws, a purported notice from the local Village Committee, letters from Ms. Chen's female relatives and others, and Ms. Chen's testimony. The BIA expressly agreed with the IJ's analysis of this evidence and stated that it was likewise unpersuaded that petitioners were entitled to

supports the finding that Ms. Chen does not have a well-founded fear of future persecution.

The IJ cited evidence in the record from the State Department Reports and a Law Library of Congress Report indicating that petitioners' children will not be considered Chinese nationals upon return. As we have explained, "State Department reports may constitute substantial evidence." *Yu*, 513 F.3d at 349. The BIA expressly rejected petitioners' efforts to distinguish the evidence in their case from *Matter of J-W-S-* and *Matter of S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007), and was not persuaded that petitioners' children will be considered Chinese citizens.[4] Petitioners have not shown that the record compels a contrary finding. Nor do petitioners challenge the IJ's finding that their stated desire to have a third child upon return to China is "speculative" and insufficient to warrant relief. Given the record, we cannot disturb the finding that Ms. Chen failed to establish an objective, well-founded fear of forcible sterilization.

Petitioners also challenge the finding that they failed to establish that Ms. Chen will be subjected to fines rising to the level of persecution. They argue that "[e]vidence suggests that Ms. Chen will face onerous fines, either to compel sterilization or in addition to sterilization." Petitioners' Br. at 43. The BIA noted that petitioners had failed to provide any

---

relief. We are satisfied that petitioners' evidence was meaningfully considered.

[4] Although Chen argues that a 2003 administrative opinion from the Fujian Province and a 2003 Department of State Consular Information Sheet on China support her claim that her United States-born children would be counted for local family planning purposes, there was substantial evidence in the record to support the contrary conclusion. Moreover, we agree with the Government that "[e]ven if [the Chens] showed evidence compelling the contrary conclusion that their United States citizen children would be considered Chinese nationals, [the Chens] have not shown an objectively reasonable well-founded fear of sterilization in China based on the record." Respondent's Br. at 23.

evidence as to their individual financial circumstances, and it found that they had failed carry their burden to prove economic restraints so severe as to constitute persecution. Substantial evidence supports these findings. For example, the 2007 State Department Country Report on Human Rights Practices for China, upon which petitioners rely, reflects a variation in the amount of social compensation fees and the severity of hardship that the Chinese government imposes for a violation of family planning policy. Thus, while we have held that the "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution," *Li v. Att'y Gen.*, 400 F.3d 157, 168 (3d Cir. 2005), the record here does not compel a finding that Ms. Chen herself faces the prospect of fines that will rise to this level.

Petitioners also argue that the BIA and the IJ erred in rejecting as unauthenticated the notice from Ms. Chen's Village Committee. According to petitioners, the notice, which was purportedly obtained by Ms. Chen's mother, establishes to a reasonable probability that Ms. Chen will be forcibly sterilized in her local community, and she suggests that her credible testimony alone sufficed to authenticate the document. The BIA, however, properly observed that the Village Committee document had not been authenticated by any means at all, such as an affidavit from Ms. Chen's mother as to how the document was obtained. Thus, the IJ properly discounted the document. Further, the BIA properly applied the rule that, "even where an applicant is credible, corroboration may be required if the applicant is to meet her burden of proof." *Chen v. Gonzales*, 434 F.3d 212, 218 (3d Cir. 2005).

In short, we discern no reversible error in the denial of petitioners' claims for asylum. Because withholding of removal carries a higher burden of proof than asylum, the request for withholding was properly denied, as well. *See Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). Finally, because petitioners do not challenge the denial of CAT relief in their brief before this Court, we deem that issue waived and do not address it. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

9

We have considered whether our recent decision in *Huang v. Att'y Gen.*, 620 F.3d 372 (3d Cir. 2010), warrants a remand of this matter to the BIA, but we conclude that it does not. In *Huang*, the BIA reversed an IJ's decision to grant asylum based on a finding that the petitioner had an objectively well-founded fear that she would be forcibly sterilized upon returning to China with her two children born in the United States. This Court observed that, in reversing the IJ's determination that Huang's fear was well-founded, the BIA had "failed to address any evidence [of record] that, if credited, would lend support to Huang's asserted fear of sterilization, and thus [the BIA] decision does not reflect a consideration of the record as a whole." *Id.* at 388. We noted that, "[w]hile we are not suggesting that the BIA must discuss every piece of evidence mentioned by an asylum applicant, it may not ignore evidence favorable to the alien." *Id.* Consequently, because the BIA's analysis in *Huang* did "little more than cherry-pick a few pieces of evidence, state why that evidence does not support a well-founded fear of persecution, and conclude that Huang's asylum petition therefore lacks merit," we remanded for the BIA to conduct a proper review and to determine from the evidence of record whether there is a reasonable possibility of forced sterilization and whether Huang's fear is objectively reasonable. *Id.*

In the present case, we do not find a similar flaw in the agency's analysis. As discussed, the IJ sufficiently considered the relevant documents and evidence of record. Unlike *Huang*, where "the BIA discussed none of [the record] evidence" suggesting that Huang might face forced sterilization upon return to China, *id.*, the BIA here stated that it had considered the evidence that petitioners submitted in an effort to distinguish their case from *Matter of J-W-S-*, but it agreed with the IJ's analysis and finding that petitioners' evidence was unpersuasive and insufficient to warrant relief. Further, the record here does not reflect that the agency "ignor[ed] evidence favorable to the alien," *Huang*, 620 F.3d at 388; rather, the IJ and the BIA considered petitioners' evidence but rejected it on the ground that it did not establish an objectively well-founded fear of forcible sterilization. Given this record, and given that substantial evidence in the record supports the agency determination, we conclude that a remand of this matter is unwarranted.

10

We have also considered petitioners' remaining arguments (including their challenge to the denial of the motions to reopen and remand so that they could present evidence from Ms. Chen's aunt – evidence that the BIA fairly characterized as "previously available"), but we find those arguments without merit and in need of no separate discussion.

For the foregoing reasons, we will deny the petition for review.