NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 09-1623, 09-4309, 10-2742
_____


JING XIU ZHAO; QIAN ZHUO LIN,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petitions for Review of Orders of the
Board of Immigration Appeals
(Agency Nos. A077 281 556 and A093 397 476)
Immigration Judge: Honorable Henry S. Dogin
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2011

Before: SLOVITER, HARDIMAN and ALDISERT, *Circuit Judges*

(Opinion filed March 25, 2011 )
_____


OPINION

SLOVITER, *Circuit Judge*.

Jing Zhao and her husband Qian Lin (collectively "petitioners"), natives and citizens of China, Fujian Province, petition for review of the decision of the Board of Immigration Appeals ("BIA") dismissing their appeal from the decision of the Immigration Judge ("IJ") denying their applications for relief from removal. Zhao and Lin also petition for review of two BIA decisions denying motions to reopen their immigration proceedings. Their petitions raise the issue that we recently addressed in *Chen v. Att'y Gen.*, --- F.3d ----, No. 09-3459, 2011 WL 923353 (3d Cir. Mar. 18, 2011), concerning asylum for the Chinese parents of American-born children whose births exceed that permitted under China's population control policies. As in *Chen*, we will deny Zhao and Lin's petitions for review.

Zhao came to the United States in 1999 from Fujian Province, China. Shortly after her arrival, she was issued a notice to appear charging that she was subject to removal for entering the United States without a valid travel document. In 2001, the IJ found Zhao removable and denied her applications for asylum, withholding of removal, and relief under the Convention Against Torture. The IJ found Zhao's claim that she had suffered a forced abortion in China not credible. The BIA affirmed the IJ's decision and denied Zhao's subsequent motion to reopen her proceedings.

In 2004, Zhao married Lin, who had come to the United States in 1996, also from Fujian Province. They had two children. In 2006, the BIA granted a second motion to reopen filed by Zhao, in which she claimed that she would be subjected to China's

coercive family planning policies if removed to China on account of the births of her two children. The BIA remanded the matter to the IJ. Lin received a notice to appear in 2007, charging that he was subject to removal for entering the United States without inspection. Lin's removal proceedings were consolidated with Zhao's reopened proceedings.

The IJ found Lin removable and denied the applications of Lin and Zhao for relief from removal, finding their case substantially similar to *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007), and stating that there was no evidence that they would face sterilization if removed.[1] In its decision issued February 17, 2009, the BIA agreed with the IJ that Lin and Zhao had not shown an objectively reasonable fear of future persecution. The BIA explained that, even if it assumed that Lin and Zhao would be in violation of Fujian Province's family planning policy based on the births of their two children, their evidence, and the documents assessed in the BIA's published decisions, did not show "a reasonable chance of forcible sterilization." *In re Zhao*, Nos. A77-281-556, A93-397-476, at 2 (BIA Dec. Feb. 17, 2009). Noting its decisions in *In re J-W-S-*, 24 I. & N. Dec. 185, and *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007), the BIA found that the evidence did not establish a "uniform policy regarding the implementation of the population

---

[1] The IJ incorrectly stated in his decision that this court had remanded the matter. As noted above, the BIA remanded the matter.

3

control law with respect to children born outside of China."[2]  *Id.*  The BIA further found no credible, individualized evidence showing that Lin or Zhao had reason to fear persecution.

Lin and Zhao then moved to reopen their proceedings, submitting additional documentation in support of their claim.  The BIA denied the motion to reopen on October 27, 2009, noting that it had considered many of the same documents in *In re S-Y-G-* and other precedential decisions.  *In re Zhao*, Nos. A77-281-556, A93-397-476, at 1-3 (BIA Dec. Oct. 27, 2009).  The BIA explained that the documents reflect that China regards a child of Chinese nationals who have not permanently settled in another country as a Chinese national, but the documents do not indicate that the parents will face forcible sterilization.  The BIA noted that a document purporting to be a certificate from the Guanban Village Committee, which stated that Zhao would face sterilization if she returned, had not been authenticated in any manner.  The BIA also rejected an argument that the 2007 Department of State Asylum Profile for China, relied upon in *In re J-W-S-* and *In re S-Y-G-*, was based on a translation error.  Finally, the BIA ruled that Lin and Zhao had not shown that they would be subject to economic harm amounting to persecution if removed to China.

---

[2]  In *In re J-W-S-*, 24 I. & N. Dec. at 188, the BIA held that an alien from Fujian Province did not establish a well-founded fear of future persecution based on the births of his two children in the United States.  In *In re S-Y-G-,* 24 I. & N. Dec. at 247, the BIA denied a motion to reopen in which an alien from Fujian Province claimed she would be persecuted on account of having given birth to a second child in the United States.

Lin and Zhao then filed a motion to reconsider and another motion to reopen, which the BIA denied on May 19, 2010. The BIA concluded Lin and Zhao had not shown a change in circumstances or country conditions that would allow them to be exempt from the time and number limitations applicable to motions to reopen, nor had they shown an error in fact or law warranting reconsideration of the BIA's earlier decision. The BIA rejected arguments that it erred in requiring authentication of the letter from the Guanban Village Committee and in giving the letter little weight. The BIA noted that Lin and Zhao could have authenticated the document but did not do so in any manner. The BIA also stated that most of the documents submitted in support of the motion had either been previously submitted or were previously available.

The BIA further rejected Lin and Zhao's contention that reopening was warranted because it had granted relief in another case based on the same documents that they had submitted. The BIA explained that the order petitioners relied upon involved a township that neither Lin nor Zhao were from and that they had not shown that regulations from other municipalities applied to them. Finally, the BIA found no basis to reconsider the claims that the 2007 Asylum Profile was based on a faulty translation or that Zhao and Lin will suffer economic harm amounting to persecution if removed.

We have jurisdiction over the petitions for review pursuant to 8 U.S.C. § 1252(a).[3]

---

[3] The petition for review of the BIA's February 17, 2009, order was docketed at No. 09-1623. The petition for review of the BIA's October 27, 2009, order was docketed at No. 09-4309. The petition for review of the BIA's May 19, 2010, order was docketed at No. 10-2742. The three petitions were consolidated for our review and decision.

5

The Attorney General correctly notes that the evidence Lin and Zhao rely upon in their opening brief was submitted in support of their first motion to reopen the proceedings. Lin and Zhao do not argue that the BIA's February 17, 2009, decision dismissing their appeal from the IJ's denial of their applications for relief from removal is not supported by substantial evidence. Absent a discussion as to how the BIA erred in its February 17, 2009, order, we will not consider that decision. *See United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) (finding issue not raised in opening brief waived). Thus, the first question before us is whether the BIA abused its discretion in denying Lin and Zhao's motion to reopen on October 27, 2009. *See Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010) (noting standard of review).

In the precedential opinion of this court in *Chen*, 2011 WL 923353, at *2, we referred to the BIA's opinion in *In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209 (BIA 2010), which we stated "contains a comprehensive discussion that persuasively addresses many of the issues before us." We believe that this BIA opinion is now the starting point for any forthcoming decisions on the issue of children of Chinese nationals born in this country.

Lin and Zhao argue in their brief that they demonstrated that they will face sterilization or economic persecution on account of having two children in violation of China's family planning policies. They point to evidence supporting the conclusion that children born abroad, whose parents are both Chinese nationals who have not settled in another country, are regarded as Chinese nationals. The BIA here acknowledged that the

documents Lin and Zhao submitted reflect this conclusion,[4] but that this was not dispositive of whether petitioners would face persecution.  We agree.

Lin and Zhao rely on documents from the internet in which Fujian Province family planning committees answered individual inquiries about the family planning policy, telling two individuals that the policy requires sterilization.  Although the BIA did not discuss these documents, we find them insufficient to show that the BIA abused its discretion in denying reopening because the documents do not reflect a policy of *forced* sterilization.  *See In re S-Y-G-*, 24 I. & N. Dec. at 257 (noting distinction between documents reflecting a policy of mandatory sterilization and mandatory forcible sterilizations and explaining that refugee status extends only to latter); *see In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. at 214 (noting discussion in 2007 Profile of Asylum Claims and Country Conditions that there have been no cases of forced abortion/sterilization in Fujian Province in ten years).  Lin and Zhao also rely on the letter from the Guanban Village Committee stating that Zhao must report for sterilization if she returns to China. The BIA did not err in discounting this document, which was not authenticated.  *See Chen*, 2011 WL 923353, at \*4 (concluding BIA properly discounted unauthenticated document).

---

[4]  In arguing that their children will be regarded as Chinese nationals, Lin and Zhao erroneously assert that the BIA decided that they should not register their children in the applicable household registry, which provides access to public services in China.

Lin and Zhao further assert that the 2008 Congressional-Executive Commission on China Annual Report ("Report") reflects that coercive measures are used to enforce population planning policies in China. Many of the citations to the report contained in their brief, however, are erroneous. Statements Lin and Zhao contend are reflected in the Report are in fact found in the 2004 hearing testimony of John Aird. The BIA concluded in *In re J-W-S*, 24 I. & N. Dec. at 189, 192, that State Department reports were more persuasive than affidavits by Aird, who did not have personal knowledge of conditions in China. *See also In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. at 213 (State Department reports are "usually the best source of information on conditions in foreign nations"). Lin and Zhao are correct that the Report states that coercive measures are used in the enforcement of population planning policies, but the Report also states that implementation tends to vary across localities. Fujian Province is noted as one of many provinces authorizing officials "to take 'remedial measures' to deal with 'unlawful' births," but further information is not provided. App. at 318. This evidence fails to show that the BIA abused its discretion in denying reopening.

Finally, Lin and Zhao argue that they established that they would suffer economic harm amounting to persecution if removed. They contend that fines for violating family planning policies are calculated in terms of multiples of a couple's annual income. In his brief on appeal, however, the Attorney General correctly stated that Lin and Zhao did not show how fines imposed for violations of family planning policies would impact them personally. We thus conclude that Lin and Zhao have not shown that the BIA abused its

8

discretion in denying their motion to reopen. *See Chen*, 2011 WL 923353, at \*4 (finding substantial evidence supported BIA's decision that petitioners failed to demonstrate economic persecution where petitioners failed to provide evidence of individual circumstances).

We also conclude that the BIA's order dated May 19, 2010, denying the motion of Lin and Zhao for reconsideration and their latest motion to reopen, was not an abuse of discretion. Lin and Zhao argue in their supplemental brief that the BIA erred in dismissing the letter from the Guanban Village Committee because Zhao had submitted an affidavit authenticating the letter. Zhao's affidavit, however, states only that she inquired about the family planning policy and "was shocked to learn from the village committee letter, which [she] received it [sic] on June 5, 2006" that she will be a "sterilization target." App. at 38. This statement does little to authenticate the letter, which was prepared on June 5, 2006. Zhao does not explain how she received the letter from her village in China on the same day on which it was prepared. To the extent Lin and Zhao further contend that the BIA erred in failing to afford them an evidentiary hearing, they have not shown that a hearing was warranted.

Lin and Zhao also argue that the BIA erred in refusing to reopen their proceedings based on their submission of new evidence regarding family planning policies in townships and cities within Fujian Province. As noted above, the BIA acknowledged that it had granted a motion to reopen in another case involving policies in Shou Zhan Township, but found that relief was not warranted here because Lin and Zhao are not

9

from that township.  Absent a showing of how the evidence applied to them, we find no abuse of discretion.

Lin and Zhao also reassert in their supplemental brief that they will be subjected to economic persecution if removed but, as noted above, they have not made any showing as to how fines imposed for violations of family planning policies would impact them. Finally, Lin and Zhao contend that the BIA abused its discretion by not crediting a report criticizing the 2007 Department of State Asylum Profile.  We disagree.  The BIA found no evidence showing that the Department of State had retracted the conclusions in the 2007 Profile and was not persuaded that the critical report was an expert opinion.  *See also In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. at 213-216 (discussing 2007 Profile at length).

Accordingly, we will deny the petitions for review.