NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2823
_____

XUE XIA ZHU; JIN FENG JIANG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A089-254-383 and A079-393-932)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2012

Before:  RENDELL, GARTH and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: July 25, 2012)
_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

        Petitioner Xue Xia Zhu, and her husband, Jin Feng Jiang, petition for review of the

Board of Immigration Appeals' ("BIA") decision to vacate the Immigration Judge's

("IJ") decision granting asylum to Zhu and Jiang. For the reasons that follow, we will affirm.

## I.

Zhu and Jiang, who are citizens of China, entered the United States without being admitted or paroled in 2004 and 2001 respectively, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). In 2007, the couple married while in the United States. In October 2007, Zhu filed an I-589 application, seeking asylum. Subsequently, the Department of Homeland Security ("DHS") issued Notices to Appear to Zhu and Jiang on May 5, 2008. Before the IJ, Zhu and Jiang both conceded removability, but Zhu sought asylum, claiming to fear persecution because of her failure to comply with Chinese family planning laws. At the time of their removal hearing, Zhu had two United States-born children and was pregnant with her third. Zhu fears that, if she returned to China, she would be forcibly sterilized or would have been forced to abort her pregnancy. Because Jiang's claim is derivative of his wife's, the success of his application relies upon his wife establishing her entitlement to protection. *See* 8 U.S.C. § 1158(b)(3)(A).

The IJ found that Zhu demonstrated a well-founded fear of persecution on account of her having violated China's family planning policies. DHS appealed the decision to the BIA, who reversed. The BIA held that the IJ's factual findings underlying her holding were not clearly erroneous, but nonetheless determined that Zhu had not met her burden of establishing that she had a well-founded fear of persecution in China. The BIA vacated the IJ's decision and ordered the Petitioners removed. Zhu timely petitioned this Court for review, and was granted a stay of removal.

**II.**

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a). *Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir. 2001). In this instance, because the BIA issued its own opinion on the merits, we review its decision rather than that of the IJ. *Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir. 2005).

Where, as in this instance, an alien seeking asylum does not allege past persecution, she must establish that she has a well-founded fear of future persecution. *See Chavarria v. Gonzalez*, 446 F.3d 508, 516 (3d Cir. 2006) (citing 8 U.S.C. § 1101(a)(42)). To make this showing, she must show a subjective fear that persecution will result upon her return to her home country, and that fear must be "objectively reasonable in light of the circumstances of the alien's case." *Huang v. Att'y Gen.*, 620 F.3d 372, 381 (3d Cir. 2010). The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). The BIA reviews the IJ's factual findings as to what will happen to the alien if she returns to her home country for clear error, but whether those facts give rise to a well-founded fear of persecution is a question of law subject to *de novo* review by the BIA. *See Huang*, 620 F.3d at 384-85.

In turn, we apply a deferential standard of review to the BIA's decision. "So long as the BIA's decision is supported by 'reasonable, substantial, and probative evidence on

3

the record considered as a whole,' we will not disturb the BIA's disposition of the case."

*Chavarria*, 446 F.3d at 515 (*quoting INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

**III**.

After a thorough review of the evidence presented in this case, we conclude that the evidence supports the BIA's finding that Zhu's fear of future persecution is too speculative to be considered well-founded.

Zhu first contests the BIA's description of enforcement of family planning policies in Fujian Province, the province in China to which she would return, as "lax" and "uneven" because the factual basis for those descriptors is not in the record. While Zhu is correct that those descriptors do not seem to be in the Administrative Record, the BIA only used those terms to describe the enforcement of financial penalties for not complying with family planning policies, not the instances of forced sterilization or abortion. Zhu's asylum claim is predicated on her fear of forced sterilization or abortion, not a fear of excessive fines. To the extent that Zhu's claim *is* based upon a fear of excessive fines, the record as a whole does not demonstrate that she would face economic sanctions "so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d at 1240. Moreover, Zhu's suggestion that she would feel pressured to abort her pregnancy or be sterilized does not amount to a well-founded fear of persecution. *See In re T-Z*, 24 I&N Dec. 163, 169 (BIA 2007) ("The statute requires that the abortion be 'forced,' not merely that a person choose an unpreferred course of action as the result of some pressure that sways the choice."). Other evidence in the record substantially supports the BIA's decision. For example, the record contains evidence that there are no

4

reported cases of forced abortion or sterilization in Fujian Province in the last ten years, that the U.S. Consulate General has not seen signs of forced sterilization or abortion, and that interviews with visa applicants from Fujian Province showed that many violators paid fines but were not subject to forced sterilization or abortion.

Zhu next argues that the BIA failed to meaningfully consider the fact that her mother underwent forced sterilization and that Zhu had previously been fined for failing to report for an OB/GYN examination as a teenager. The BIA correctly noted that Zhu failed to show how her mother's circumstances are similar to her own. Furthermore, Zhu's fear based on the idea that her previous fine raises her chances that she would be forcibly sterilized is too speculative, as nothing in the record supports this conclusion.

Finally, Zhu asserts that the BIA erred in construing her case as turning on the fact that her children were born in the United States, and thus are United States citizens. Zhu points to the 2007 State Department Country Profile, which states that "China does not recognize dual citizenship, and children without a Chinese household registration (i.e., who enter and live in China as American citizens rather than as Chinese permanent residents) are not eligible for free public education and other social benefits available to Chinese permanent residents," in support of the premise that she would need to register her children, which would in turn subject her to Chinese family planning policy rules and regulations. (A.R. 276.) However, if she does not register her children, the Country Profile goes on to state that the benefits would still be available to her children, "but at a higher cost than the parents of permanent resident children pay." Importantly, the Country Profile states that "children born abroad, if not registered as permanent residents

5

of China . . ., are not considered as permanent residents of China, and therefore are not counted against the number of children allowed under China's family planning law." *Id.* Thus, Zhu has failed to establish a well-founded fear of persecution on account of having United States-born children, as she failed to show that these children would be treated as Chinese nationals. *See Ying Chen v. Att'y Gen.*, 676 F.3d 112 (3d Cir. 2011).

In sum, we disagree with Zhu's assertion that BIA inappropriately "cherry picked" a few pieces of evidence to support its conclusion; rather, the BIA reviewed the record evidence as a whole and concluded that it did not establish an objectively well-founded fear of prosecution. We see no reason to disturb the BIA's decision. *See Huang*, 620 F.3d at 388.

IV.

For the foregoing reasons, we will deny the petition for review and affirm the decision of the BIA.

**<u>Zhu, et. al. v. Attorney General</u>**
No. 11-2823

GARTH, *Circuit Judge*, dissenting.

I do not agree with the majority's decision to affirm the BIA. I would remand this case to the BIA, as the BIA engaged in improper fact findings in its review of the IJ's decision. Under 8 CFR § 1003.1(d)(3), the BIA may not reverse an IJ's factual findings unless they are "clearly erroneous." The BIA did not determine that the factual findings of the IJ were "clearly erroneous," rather the BIA improperly determined that the policy that Zhu would face in China would probably consist of "incentives and economically-based penalties" (BIA opinion at 2). Contrary to the IJ, the BIA also improperly found that Zhu's daughters' U.S. citizenship status would be relevant to Zhu's treatment upon return to China. These factual determinations contradict the facts as found by the IJ. (*See Huang v. AGUS,* 620 F.3d 372 (3d Cir. 2010)).

Inasmuch as the IJ did not commit clear error in reaching its factual determinations, the BIA was obligated to accept those facts and the others found by the IJ. Because the BIA violated this standard, I would return this petition to the BIA for proper consideration. At the very least, the IJ's opinion, based upon the evidence in the record, should persuade us, as I am persuaded, that Zhu's petition should be considered by the Circuit Mediator or reconsidered under the program of prosecutorial discretion recently announced by the President.