**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3651
_____

KIRANDEEP KAUR ANAND; JATINDER PAL SINGH ANAND;
JANAM SINGH ANAND; HERSH SINGH ANAND,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A089-254-092, A092-781-153, A089-254-093, A089-254-094)
Immigration Judge: Alberto J. Riefkohl
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2014
Before: FUENTES, COWEN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 5, 2014 )
_____

OPINION
_____

PER CURIAM

Kirandeep Kaur Anand ("Anand"), a citizen of India, petitions for review of an

order of the Board of Immigration Appeals ("BIA"), which dismissed her appeal from an

Immigration Judge's ("IJ") final removal order. We will deny the petition for review.

# I.

Anand entered the United States in 2000, and sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture in 2008[1] on behalf of herself and her family.[2] Anand and her family are Sikhs, and she applied for asylum based upon her father's active support for Akali Dai (a Sikh political party). Anand asserted that, due to her father's political activities and due to her family's religious beliefs, she has suffered past persecution and has a well-founded fear of future persecution.

In support of this contention, Anand testified that, beginning in 1984, Hindus began threatening and verbally harassing her family. After leaving India in 1985 for Kuwait and living both there and in the United States for a period of time, Anand returned to India in 1991. The same year, her father was arrested at a political rally and was detained for 10 days and beaten. In addition, Anand testified that in May 1991, she, her husband, and their daughter were in a car accident that resulted in the death of her daughter. Anand claims the car accident was staged by Hindu extremists. After the car accident, Anand and her family were harassed via telephone threats. Gunshots were fired at their home. In December 1992, Anand and her family left India for Kuwait, and they entered the United States in 2000. Anand returned to India for three separate visits

---

[1] The IJ found that the one-year limitations period for applying for asylum did not apply here as a result of ineffective assistance of counsel.

[2] Anand has two minor children, Janam Singh Anand and Hersh Singh Anand, and a husband, Jatinder Pal Singh Anand. All of the members of the Anand family are citizens of India. Jatinder, Janam, and Hersh Anand are seeking derivative relief through Anand's application for asylum. They also make independent claims for withholding of removal, relying on the identical facts relied upon by Anand in her asylum application.

between 1992 and 2000, each visit lasting approximately one month. During a visit in 1999, her father was again arrested and beaten. Anand testified that the police said her family did not belong in India, and they threatened to take Anand and her mother to a "whorehouse" to work as prostitutes.

In July 2009, the IJ conducted a merits hearing. The IJ, while finding Anand to be credible, denied her claims for relief. The IJ noted that the harassment and verbal threats did not rise to the level of persecution and that, accordingly, Anand had not suffered past persecution. Further, the IJ noted that Anand could not convincingly trace the car accident to Hindu extremists or connect the accident to Anand being a Sikh or her father's political activities. The IJ also noted that in light of Anand's three visits to India, the continuing presence of her family in India, and the current makeup of the Indian government, Anand could not establish a well-founded fear of future persecution. The BIA agreed. It dismissed Anand's appeal, and she filed a timely petition for review.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed and partially reiterated the IJ's decision, we review the IJ's decision along with the BIA's decision. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009) (citing Guan v. Gonzales, 432 F.3d 391, 394 (2nd Cir. 2005). We review the factual findings under the substantial evidence standard. See Sandie, 562 F.3d at 251. The BIA's findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the BIA's legal decisions. See Sandie, 562 F.3d at 251.

3

To establish past persecution, an alien must show that she suffered "highly imminent and menacing" "threats to life, confinement, torture, [or] economic restrictions so severe that they constitute a real threat to life or freedom . . . on account of a statutorily protected ground, which includes imputed political opinion . . . ." Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006). A well-founded fear of future persecution has both a subjective and objective aspect. See Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010). To satisfy the objective prong, the applicant must show either that (1) she would be individually singled out for persecution or (2) there is a pattern or practice in the home country of persecuting similarly situated people. Id. To be eligible for withholding of removal under the CAT, Anand needed to demonstrate that it is more likely than not that she would be tortured if removed to India. See 8 C.F.R. § 1208.16(c)(2).

**III.**

Anand argues that she established past persecution on the basis of the threats she and her family were subjected to, the arrest and beating of her father on account of his political activities, shots fired at her family's home, and the car accident that killed her daughter. However, as the BIA concluded, threats alone, while surely abhorrent, are insufficient to establish past persecution. See Li v. Att'y Gen., 400 F.3d 157, 164 (3d Cir. 2005). Further, the arrest and beating of her father on two occasions did not constitute persecution of Anand and her family. See Cham v. Att'y Gen., 445 F.3d 683, 693 (3d Cir. 2006).

Regarding both the shots fired at her home and the car accident, the IJ and BIA concluded that the evidence did not establish that the car accident was intentional or that

4

it or the shots fired at her family's home occurred due to her religious affiliation or imputed political opinion.[3] Anand testified that the car accident occurred in front of a Hindu temple and that her mother-in-law received a telephone call indicating that Anand, her husband, and her daughter had perished in the crash. Anand argues that these facts indicate that the other car targeted her and her family, as the telephone caller would have to have known of the accident and Anand's contact information.

It is not entirely clear what the caller said to Anand's mother-in-law. On three separate occasions, Anand testified that the caller merely said that Anand, her husband, and her daughter were dead. See A.R. 117-18, 157, 164; see also id. at 210 (declaration). However, she also testified that the caller said "just be ready, that we've done our job and they're all gone." See A.R. 127. While the IJ found Anand to be credible, he nevertheless concluded that Anand's circumstantial evidence that the crash was staged was weak at best. Specifically, the IJ and BIA noted that Anand did not see the driver of the other car and could not identify the caller. Indeed, Anand's assertions about the crash are speculative, and we are not compelled to disagree with the conclusion that Anand failed to show that she suffered past persecution on account of her religion or imputed political opinion. See Al-Fara v. Gonzales, 404 F.3d 733, 740 (3d Cir. 2005) (speculation is not an appropriate basis to establish past persecution); 8 U.S.C. § 1252(b)(4)(B).

Substantial evidence likewise supports the BIA's conclusion that Anand failed to show that she possesses a well-founded fear of future persecution. As Anand did not

---

[3] No evidence was presented concerning who fired the shots, why and when they were fired, or if Anand was living in the house when they were fired.

suffer past persecution, she is not entitled to a presumption that she has a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1); see also Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003). Further, while it is clear that Anand subjectively fears returning to India, she cannot satisfy the objective prong. See Huang, 620 F.3d at 381. The record establishes that: (1) Anand's parents and two brothers continue to live in India and have suffered no harm; (2) Anand remained in India for two years after the car accident without suffering any harm, and was not persecuted during her return visits to India; and (3) Anand's father, the purported source of the conflict, continues to live in India. Anand's family's continued safety in India undermines her concerns of persecution should she return. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). The record thus supports the BIA's conclusion that Anand has failed to establish a well-founded fear of future persecution should she be required to return to India.

Because Anand did not meet the standard for obtaining asylum, she also failed to satisfy the "higher burden of proof" required for withholding of removal. See Chen v. Att'y Gen., 676 F.3d 112, 117 (3d Cir. 2011). Finally, Anand has not shown that the record compels a finding that she would likely be tortured by, or with the acquiescence of, the Indian government if removed to India. See 8 C.F.R. § 1208.16(c)(2); Kaita v. Att'y Gen., 522 F.3d 288, 300 (3d Cir. 2008).

**IV.**

For the foregoing reasons, we will deny the petition for review.