**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 13-1419

TING YING TANG,
                                   Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                          Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-905-761)
Immigration Judge:  Hon. Eugene Pugliese

Submitted under Third Circuit LAR 34.1(a)
On November 5, 2013

Before:  GREENAWAY, JR., VANASKIE and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 3, 2014)

O P I N I O N

GREENAWAY, JR., <u>Circuit Judge</u>:

1

Ting Ying Tang ("Tang") petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal. For the following reasons, we will deny the petition for review.

## I.     Background

Because we write primarily for the parties, we recount only the essential facts. Tang, a native and citizen of the People's Republic of China from Fujian Province, entered the United States in September 2000 without a valid immigration visa or other entry document. In August 2008, while she was pregnant with her second child, she filed affirmative applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Tang claimed that, if she were removed to China, she feared that she would be forcibly sterilized and fined pursuant to a Fujian Province family planning policy. She also claimed a fear of persecution because of her Christian religion (to which she converted after being introduced to the religion in December 2010). In September 2008, the Government charged Tang as removable under 8 U.S.C. § 1227(a)(1)(A). While her immigration proceedings were ongoing, she gave birth to her second child and, thereafter, to a third child.

In April 2011, following a hearing, the Immigration Judge ("IJ") denied relief for two reasons. First, with respect to the forcible sterilization claim, the IJ stated that the essential "question is whether there is any known history of individuals returning from the United States . . . with two or more children who have been persecuted because of it." (App. 38.) After "look[ing] in the record in vain for information" that sufficiently addressed this question, the IJ determined that Tang had failed to meet her burden of

proof, "especially in light of" commentary in the 2007 United States Department of State Profile of Asylum Claims and Country Conditions for China ("2007 Profile") indicating that the State Department "does not have any knowledge of any such thing happening." (*Id.* at 39.) Second, with respect to the Christian religion claim, the IJ determined that Tang had also failed to meet her burden of proof, particularly because the 2007 Profile reflected that, of the millions of unregistered Catholics and Protestants living in China, "[t]here is no evidence of a pattern or practice of persecution . . . against church members [irrespective of] whether [they] are attending registered or unregistered church." (*Id.* at 42.) The IJ denied Tang's applications for asylum, withholding of removal, and relief under CAT.

In January 2013, the BIA dismissed Tang's appeal after failing to find any "clear error in the Immigration Judge's determination that the respondent has not established a well-founded fear of persecution in China on account of her religion" or "on account of China's family planning policy." (*Id.* at 4, 5.) The BIA also rejected Tang's due process claims.[1] This petition for review followed.[2]

## II.    Analysis

"So long as the BIA's decision is supported by 'reasonable, substantial, and probative evidence on the record considered as a whole,' we will not disturb the BIA's

---

[1] Tang does not raise in her brief any of the due process arguments she presented to the BIA, so we need not consider them. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

[2] We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1).

3

disposition of the case." *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).  With respect to the scope of our review, we review the BIA's order of removal but may also look to the IJ's decision to the extent that the BIA affirmed its conclusions.  *See id.* ("Inasmuch as the BIA deferred to the IJ's credibility determinations and adopted the reasons the IJ set forth, we have authority to review both determinations.").

If petitioner cannot establish past persecution, she must demonstrate a well-founded fear of future persecution to obtain asylum.  *See Chavarria*, 446 F.3d at 515-16 (citing 8 U.S.C. § 1101(a)(42)(A)).  To make this showing, petitioner must "demonstrate a subjective fear . . . that is supported by objective evidence that persecution is a reasonable possibility." *Yu v. Att'y Gen.*, 513 F.3d 346, 348 (3d Cir. 2008).

## A.  Forced Sterilization

Tang alleges that both the BIA and the IJ should have accorded greater weight to the evidence she set forth concerning forced sterilizations.  After reviewing the record as a whole, we are convinced that the record evidence does not compel us to reach a conclusion contrary to that of the IJ and the BIA.

`Among other documents,[3] Tang submitted (i) one certificate from the "Xiang Yang Villager Committee of Ting Jian[g] Town," which states that Tang "is a villager of

_____

[3] To support her claim that persons generally, rather than only Tang specifically, are subject to forced sterilization upon returning to China after having more than one child abroad, Tang relied on a number of documents, including affidavits and other evidence from two individuals.  One affidavit indicates that Renzun Yuan ("R. Yuan") was forcibly sterilized upon his return to Fujian Province after having children during his time in the United States, and another affidavit indicates that Zhousheng Yuan accompanied

4

this village. . . . and sterilization must be performed after the second birth," (*see id.* at 258-59); and (ii) another certificate from the Ting Jiang Town Family Planning Office explaining its compulsory sterilization policy. (*Id.* at 262-63.) Tang also submitted an affidavit from her mother-in-law, which stated that her mother-in-law obtained the Xiang Yang Villager Committee and Ting Jiang Town Family Planning Office certificates and had been told by the Ting Jiang Town Family Planning Office that either her daughter-in-law or son would be forcibly sterilized upon returning to China.

The IJ and BIA thoroughly considered this and all other evidence set forth in the record and we will therefore not disturb the BIA's conclusions. First, both the IJ and BIA noted that none of Tang's documents had not been authenticated. Second, even assuming they had been authenticated, the IJ and the BIA reasoned that the documents' assertions do not necessarily support Tang's argument that forced sterilization would actually be enforced—particularly as against Tang for children born in the United States. (*Id.* at 4-5 ("[E]ven if authentic, the documents do not show that the punishments for multiple children would be carried out as written."); *see also id.* at 42-43.) Lastly, both the IJ and BIA reasonably relied upon documentation in the record supporting the Government's position. (*See, e.g.*, *id.* at 4; *id.* at 36-40.) For example, the BIA pointed to commentary

R. Yuan to his forced sterilization. (App. 590-91; 609.) The BIA rejected this evidence because, *inter alia*, Tang "has not indicated whether [R. Yuan's] circumstances are similar to her situation, . . . [which could be achieved by, for example, establishing] the citizenship of [R. Yuan's] children . . . ." (*Id.* at 5.) Here, the record does not make clear whether R. Yuan's children are citizens of the United States or China, and thus it remains an open question whether the circumstances of R. Yuan and Tang are, or would be, comparable.

5

in the 2007 Profile, which essentially concludes that "U.S. officials in China are not aware of the alleged official policy at the national or provincial level mandating the sterilization of one partner of couples that have given birth to two children in the United States or abroad." (*Id.* at 131-32; *see also id.* at 4, 37-38.) The BIA noted that the 2007 Profile also states that "the Population and Family Planning Commission of Fujian Province stated in an October 2006 letter that children born abroad, if not registered as permanent residents of China (i.e., not entered into the parents' household registration), are not considered as permanent residents of China, and therefore are not counted against the number of children allowed under China's family planning law." (*Id.* at 4, 132.)

Given that the BIA considered all of the evidence in the record, together with the IJ's determinations and conclusions, and explained its reasons for balancing the evidence as it did, we are not compelled to reach a conclusion contrary to that of the IJ and BIA. *Cf. Zhu v. Att'y Gen.*, ⸺ F.3d ⸺, 2014 WL 815133, at *2-7 (3d Cir. Mar. 4, 2014) (remanding where, in denying a motion to reopen, the BIA failed to "meaningfully consider[] the evidence and arguments [petitioner] presented" and failed to explain why the BIA rejected certain evidence). In the instant case, the BIA considered Tang's village documents despite acknowledging that the documents had not been authenticated. It considered the 2007 Profile and determined that it constituted reliable evidence undermining Tang's position. And, it found that there was otherwise an absence of sufficient evidence to show that Fujian Province's family planning policy would be applied to Tang despite the fact that her children were born in the United States. Therefore, it was permissible for the BIA to find that Tang failed to meet her burden of

6

proof.  *See, e.g.*, *Yu v. Att'y Gen.,* 513 F.3d 346, 349 (3d Cir. 2008) (where "the BIA's explanation of why it decided to credit [State Department] reports" over evidence set forth by petitioner was "well reasoned," it "necessarily follows that the BIA's resolution of this matter was supported by substantial evidence").

## B.  Religious Persecution

Regarding Tang's religious persecution claim, substantial evidence also supports the BIA's determination that she failed to show a well-founded fear of future persecution. Tang needed to show an objectively reasonable fear by showing either that she would be individually selected for persecution or by demonstrating a "pattern or practice" of persecution of Christians in China.  *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) (citing 8 C.F.R. § 208.13(b)(2)(iii)(A)).  To support her claim, Tang asserted that she began practicing Christianity in December 2010 and that, if removed to China, she would continue to do so and would be persecuted for her practice.  (*See* Appellant Br. 1-2, 11-12.)  The BIA acknowledged this testimony but also considered the fact that she only began practicing Christianity after removal proceedings had commenced.  (App. 4.) Turning to evidence it found more persuasive than Tang's testimony, the BIA next considered the 2007 Profile, which indicates that there are "30 million to 100 million unregistered Protestants and more than 5 million unregistered Catholics practic[ing] in China," and that while "local officials often move aggressively against unregistered groups they regard as growing too large or espousing beliefs they consider threatening to social stability, many house churches, which conduct Bible studies, prayer meetings, or worship services, are quietly tolerated by local authorities."  (*Id.* at 4.)

7

Based on our review of the BIA and IJ decisions, together with the record before us, we cannot say that the BIA erred in finding that Tang failed to meet her burden of proof regarding establishing a well-founded fear of persecution due to her Christian religion. *See, e.g., Ambartsoumian v. Ashcroft*, 388 F.3d 85, 90 (3d Cir. 2004) (petitioners failed to establish well-founded fear of future persecution because of their Christian religion and ethnicity).

## III.    Conclusion

We conclude that the evidence in the record does not provide a sufficient basis for overturning the conclusions reached by the BIA. *See Chen v. Ashcroft*, 376 F.3d at 223 ("[A]fter reviewing the record as a whole we are convinced that the record evidence does not compel us to reach a conclusion contrary to that of the IJ and the BIA."). Since Tang did not meet the standard for obtaining asylum, she also failed to satisfy the higher burden of proof required for withholding of removal. *Chen v. Att'y Gen.*, 676 F.3d at 117.[4] For the foregoing reasons, we will deny the petition for review.

---

[4] Since Tang "has not raised any argument regarding the denial of her CAT claim . . . we deem her appeal of the CAT claim to have been waived." *Lie v. Ashcroft*, 396 F.3d 530 at 532 n.1.