05-6035-ag
Xiao Kui Lin v. Mukasey

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2007

Submitted: January 3, 2008                    Decided: January 22, 2009
Last Supplemental Brief Filed: March 21, 2008

Docket No. 05-6035-ag

_____

XIAO KUI LIN,

*Petitioner*,

-v.-

MICHAEL B. MUKASEY,[1] ATTORNEY GENERAL OF THE UNITED STATES, THE
UNITED STATES DEPARTMENT OF JUSTICE, MICHAEL CHERTOFF, SECRETARY OF
THE DEPARTMENT OF HOMELAND SECURITY, and THE DEPARTMENT OF
HOMELAND SECURITY,

*Respondents*.

_____

Before:        SOTOMAYOR and LIVINGSTON, *Circuit Judges*, and CARMAN, *Judge*.[2]

Petition for review of the Board of Immigration Appeals's denial of asylum and withholding

of removal on the ground that petitioner had failed to show a likelihood that he would be sterilized

forcibly upon his return to China for having more than one U.S.-born child.

Petition granted and matter remanded.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B.
Mukasey is substituted automatically for former Attorney General Alberto R. Gonzales as the
respondent in this case.

[2]The Honorable Gregory W. Carman of the United States Court of International Trade,
sitting by designation.

DOUGLAS B. PAYNE, ESQ., New York, New York, *for Petitioner*.

LARRY LUDKA, Assistant United States Attorney, *for* DONALD J. DeGABRIELLE, JR., United States Attorney for the Southern District of Texas, Corpus Christi, Texas, *for Respondents*.

LIVINGSTON, *Circuit Judge*:

Petitioner Xiao Kui Lin, a citizen of China, seeks review of the October 17, 2005 decision of the Board of Immigration Appeals ("BIA") adopting and affirming the May 26, 2004 decision of Immigration Judge ("IJ") Robert Weisel denying Lin's applications for asylum and withholding of removal. *In re Xiao Kui Lin*, No. A 72 473 382 (B.I.A. Oct. 17, 2005), *aff'g* No. A 72 473 382 (Immig. Ct. N.Y. City May 26, 2004). Because we find errors in the BIA's order and cannot predict with confidence that the BIA would reach the same result on remand absent these errors, we are compelled to grant the petition, vacate the October 17, 2005 order, and remand the matter to the BIA.

*Background*

Lin hails from the city of Fouzhou in the Fujian Province of China. He entered the United States unlawfully in 1992 and unsuccessfully applied for asylum based on an alleged fear that he would be persecuted for his political activism if he returned to his home country. Though he was ordered to be deported in 1994, Lin remained in the United States, and in 2002 moved for a stay of removal and to reopen asylum proceedings based on changed personal circumstances, namely his marriage and the birth of a daughter. In an amended asylum application, Lin averred that he and his wife intended to have another child, but that if they returned to China and attempted to have a second child there, the pregnancy either would be aborted forcibly, or Lin or his wife would be forced to

2

undergo a sterilization procedure. The motions to reopen and for a stay of removal were granted, and the IJ held a hearing on Lin's amended asylum application on May 26, 2004.

Lin testified at the hearing that he was married on October 2, 2000, in New Bedford, Massachusetts, and that he now had two U.S.-born daughters, the first born on March 27, 2001, and the second on May 17, 2003, subsequent to the filing of his amended asylum application. His wife was present at the hearing with both children, but did not testify. Lin submitted his daughters' birth certificates and his Massachusetts marriage certificate indicating that he had married on September 24, 2000, and that the marriage certificate had been issued and recorded on October 2, 2000.

Lin testified that he and his wife intended to have another child, and that they hoped to have a boy to carry on the family name. He reiterated his fear, however, that he and his wife would be arrested and sterilized forcibly for having violated family planning policies if they were to return to China. Lin testified that his mother had been sterilized forcibly in China after the birth of his younger brother, that his sister-in-law had been sterilized as well, and that his sister had been fined for violating a Fujian Province family-planning policy. In an attempt to corroborate these claims, Lin offered: (1) a Birth Control Operation Certificate reflecting that his mother had been sterilized in 1979; (2) a certification from the Committee of Min An Village that his mother had violated the birth control policy of Fujian Province by having three children and that the "Village Committee took her to undergo a female sterilization procedure," App. 129; (3) affidavits from his mother and her sister-in-law stating that after Lin's mother gave birth to her third child, she was arrested and forced to undergo involuntary sterilization; (4) a receipt reflecting that his sister had paid a fine in 1998 "for missing a female examination," App. 126; and (5) the Family Planning Stipulations for Fujian Province.

3

The IJ denied the applications for asylum and withholding of removal on the ground that Lin had failed to establish that if he returned to China, he would be found in violation of a family planning policy and therefore sterilized forcibly. The IJ expressed doubt that Lin "will ever return to China as part of an intact family" because "[n]o testimony was offered today by [Lin] that if he returns to China, he will return with his wife . . . [o]r for that matter, that his children will return with him." App. 38. The IJ went on to "question[] the closeness of [Lin's] relationship [with his wife], and whether they even live together," pointing to the fact that the marriage certificate and Lin's asylum application indicated that Lin was married on September 24, 2000, whereas Lin testified that he had married on October 2, 2000. App. 39.

The BIA affirmed the IJ's decision on October 17, 2005. It concluded that Lin had not established a well-founded fear of persecution "based upon the birth of his United States citizen children" because "[t]here is no national policy to sterilize Chinese citizens who have broken the population control law by virtue of having children in other countries." App. 2. The BIA stated that, in any event, "[i]t is unclear whether [Lin's] United States citizen children will actually return to China with him," and "[t]here is also insufficient documentary evidence of record to convince the Board that there is any likelihood that [Lin] will be sterilized by the Chinese authorities." *Id.*

Lin now petitions for review of the BIA's October 17, 2005 order.

4

*Discussion*

"Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007). We review factual findings for "substantial evidence," and will not disturb them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Dedji v. Mukasey*, 525 F.3d 187, 191 (2d Cir. 2008). We will vacate and remand for new findings, however, if the agency's reasoning or its factfinding process was sufficiently flawed. *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 335 (2d Cir. 2006).

Asylum is available to an individual who establishes that he is a "refugee," 8 U.S.C. § 1158(b)(1); *Xu Sheng Gao v. U.S. Attorney Gen.*, 500 F.3d 93, 97 (2d Cir. 2007), meaning that he is unable or unwilling to return to his native country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Xu Sheng Gao*, 500 F.3d at 97 (quoting 8 U.S.C. § 1101(a)(42)). A person "who has been forced to abort a pregnancy or to undergo involuntary sterilization, or . . . who has a well founded fear that he or she will be forced to undergo such a procedure" qualifies as a refugee. *See* 8 U.S.C. § 1101(a)(42). In addition, we have observed that "[f]orced sterilization or abortion threatens [a petitioner's] life or freedom" and is a basis for withholding removal when a petitioner establishes that it is more likely than not that he or she will be subjected to such a procedure and the government cannot establish changed country conditions. *Yi Long Yang v. Gonzales*, 478 F.3d 133, 141 (2d Cir. 2007) (alteration in original) (quoting *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 399 (2d Cir. 2005)).

5

The BIA gave three reasons for denying Lin's applications for asylum and withholding of removal, none of which withstands scrutiny. The finding that Lin failed to show that he would return to China with his wife and children and thus come within the ambit of a forcible sterilization policy, assuming one existed, was not supported by substantial evidence. Lin appeared at his hearing with his wife and children and testified that both he and his wife were "thinking of possibly having another child" to "continue our family name." App. 82. When asked what he believed would happen if he were forced to return to China, Lin stated that "*we* will be arrested [and] sterilized." *Id.* (emphasis added). Lin did not state specifically that he intended to take his children to China if he returned, and his wife did not testify at the hearing. But the record on which the agency based its finding that Lin would return to China alone was plainly inadequate.

In "question[ing] the closeness of [Lin's] relationship" with his wife, App. 38, the IJ relied solely on the fact that Lin testified that he was married on October 2, 2000, while his marriage certificate and asylum application indicated that the actual date of his wedding ceremony was September 24, 2000. The IJ concluded that "[n]o explanation for this anomaly exists." App. 39. But the marriage certificate shows that October 2, 2000 was the date the certificate was recorded by the New Bedford town clerk. The IJ failed to address why it would be unreasonable for Lin to believe that the date on which his marriage certificate was filed with a governmental agency was the date on which he officially became married. Hence, the IJ overlooked a plausible explanation for Lin's confusion that was apparent in the record evidence that the IJ relied upon to conclude that no such explanation existed. *See Latifi v. Gonzales*, 430 F.3d 103, 105 (2d Cir. 2005) (rejecting IJ's adverse credibility finding where IJ failed to evaluate plausible explanations for inconsistencies); *Tian-Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir. 2004) (noting that remand may be appropriate

6

"where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts"). We therefore cannot say that a substantial basis existed for concluding that Lin would return to China without his family if he were ordered removed.[3]

Another of the BIA's reasons for denying asylum was that, even if Lin were to return with his children, he was unlikely to be persecuted because China has no national policy of forcibly sterilizing those who have broken the population control laws by having children in other countries. This finding was made not by the IJ in the first place, but by the BIA on appeal. The agency's own regulations, however, prohibit the BIA from engaging in factfinding "in the course of deciding appeals," except insofar as it takes "administrative notice of commonly known facts such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv); *see Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007). In determining that China has no national policy of forcibly sterilizing those with more than one foreign-born child, the BIA did not take administrative notice of any commonly known facts or official documents—indeed, the BIA cited no evidence for this proposition whatsoever. The BIA's failure to cite any support for its determination of Chinese

---

[3] Portions of the IJ's analysis of Lin's relationship with his wife and children may be read to raise other legal issues, including (i) whether the IJ could legitimately require Lin to affirmatively prove his intent to take his children with him to China should he be deported; and (ii) whether an alien who can avoid persecution by leaving his or her children in the United States is thereby rendered ineligible for asylum. *Cf., e.g., Abay v. Ashcroft*, 368 F.3d 634, 642 (6th Cir. 2004) (noting that, in adjudicating motion to reopen asylum claim turning on prospect of genital mutilation of alien's daughter in alien's home country, "the Board made clear that the alien need not 'prove that she would take the child with her as part of her burden to demonstrate eligibility for relief, if she has custody of the child'" and that "'[n]ormally a mother would not be expected to leave her child in the United States in order to avoid persecution'" (quoting *In re Dibba*, No. A73 541 857 (B.I.A. Nov. 23, 2001))); *Yu Huan Jiang v. U.S. Dep't of Justice*, 201 F. App'x 838, 840 (2d Cir. 2006) (unpublished summary order) ("[W]e find groundless and offensive the IJ's suggestion that an alien is unable to establish a fear of persecution where she can avoid persecution by separating from her child."). It is unclear the extent to which the IJ's flawed analysis concerning Lin's marriage date affected its discussion of these other issues. Therefore, we decline to address them here.

national policy prevents this finding from serving as a valid basis for its decision. *See Anderson v. McElroy*, 953 F.2d 803, 806–07 (2d Cir. 1992) ("[T]he BIA's denial of relief can be affirmed only on the basis articulated in the decision . . . and we cannot assume that the BIA considered factors that it failed to mention in its decision." (omission in original) (quoting *Mattis v. INS*, 774 F.2d 965, 967 (9th Cir.1985))).

The BIA's final reason for denying relief was that Lin submitted "insufficient documentary evidence . . . that there is any likelihood that [he] will be sterilized by the Chinese authorities" for having more than one U.S.-born child. App. 2. The problem with this finding is that, while it perhaps was supported by the record, we have no way to discern the extent to which it was based on an assessment of the record distinct from the flawed reasoning discussed above. The only specific reference the BIA makes to Lin's individual circumstances is in the preceding sentence: "It is unclear whether the United States citizen children will actually return to China with the respondent." *Id.* This statement is infected with the same incorrect perception of the record that undermined the IJ's assessment of Lin's relationship with his family. *See Tian-Yong Chen*, 359 F.3d at 127. There is also a danger that the BIA's bald and therefore improper declaration of Chinese national policy might have framed its subsequent analysis of Lin's documentary evidence and served as a faulty predicate in finding that he was unlikely to be sterilized upon a return to China. Because the BIA decision offers nothing to clarify the situation, its final reason for denying Lin relief must also be rejected. *See Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) ("[T]he BIA should provide us with more than 'cursory, summary or conclusory statements,' so that we are able to discern its reasons for declining to afford relief to a petitioner." (quoting *Anderson*, 953 F.2d at 806)).

Although the agency offered no valid reason for denying asylum or withholding of removal, we need not remand if doing so would be futile, that is, if we can predict with confidence that the agency would reach the same result even absent these errors. *See, e.g.*, *Biao Yang v. Gonzales*, 496 F.3d 268, 272 (2d Cir. 2007); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 (2d Cir. 2005). The futility analysis here relates to whether Lin reasonably fears future persecution based on the fact that he has two U.S.-born children.

Decisions rendered subsequent to the BIA opinion at issue in this appeal inform our analysis of how the BIA might hypothetically decide this case on remand. In 2006, we noted in *Shou Yung Guo v. Gonzales* the existence of documents that might support the finding that the Fujian Province has a forcible sterilization policy.[4] 463 F.3d 109, 115 (2d Cir. 2006). In three precedential opinions decided in the summer of 2007, the BIA considered the *Shou Yung Guo* documents and related

[4] Specifically, the record in *Shou Yung Guo* included the following three documents: (1) CHANGLE CITY FAMILY-PLANNING ADMIN., ADMINISTRATIVE OPINION ON SANCTIONS AGAINST FAMILY-PLANNING VIOLATIONS BY ZHENG YU HE AND HIS SPOUSE (May 22, 2003); (2) FUJIAN PROVINCE DEP'T OF FAMILY-PLANNING ADMIN., ADMINISTRATIVE DECISION ON REQUEST FOR DIRECTIVE FROM FUZHOU CITY ADMINISTRATION ON FAMILY-PLANNING IN CONNECTION WITH BIRTH OF A SECOND CHILD BY ZHENG YU HE OF CHANGLE CITY MUNICIPAL BUREAU OF CONSTRUCTION AND HIS SPOUSE IN USA (2003); and (3) CHANGLE CITY FAMILY-PLANNING ADMIN., Q & A FOR CHANGLE CITY FAMILY-PLANNING INFORMATION HANDBOOK (July 1999). *See generally* App. to Appellee's Letter Br., Mar. 4, 2008 (reprinting these documents). The record in this case does not include these documents; nor does it contain any versions of two State Department publications that have figured prominently in BIA asylum decisions analyzing China's one-child policy: CHINA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS and the China chapter of the COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES. *See generally In re S-Y-G-*, 24 I. & N. Dec. 247, 253 n.2, 255–57 (B.I.A. 2007); *In re J-H-S-*, 24 I. & N. Dec. 196, 198–203 (B.I.A. 2007); *In re J-W-S-*, 24 I. & N. Dec. 185, 186 n.1, 188 n.4, 189–94 & nn.5, 8–9 (B.I.A. 2007). However, Lin has expressed his intention on remand to offer the *Shou Yung Guo* documents listed above, among others, on a motion to reopen the evidentiary record before the BIA. *See* Appellant's Letter Br. 5, Mar. 21, 2008. Moreover, the BIA has the power to take administrative notice of official reports such as those from the State Department. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *see also Qun Yang v. McElroy*, 277 F.3d 158, 163 n.4 (2d Cir. 2002). We express no view as to the evidence that the agency might consider on remand. *Cf.* 8 U.S.C. § 1252(a)(1); *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 269 (2d Cir. 2007).

evidence alongside State Department country reports and determined that each applicant had failed to establish that China in general or the Fujian Province in particular adheres to an official policy of forcibly sterilizing those with more than one child, as opposed to offering economic incentives to undergo voluntary sterilization procedures. *See In re S-Y-G-*, 24 I. & N. Dec. 247, 253–59 (B.I.A. 2007) (involving asylum applicant with one child born in China and another born in the United States), *on remand from Shou Yung Guo*, 463 F.3d 109; *In re J-H-S-*, 24 I. & N. Dec. 196, 201–03 (B.I.A. 2007) (with children born in China); *In re J-W-S-*, 24 I. & N. Dec. 185, 191–93 (B.I.A. 2007) (with children born in the United States). Recently, in *Jian Hui Shao v. Mukasey*, this Court denied petitions for review of the *J-H-S-*, *J-W-S-*, and *S-Y-G-* decisions, finding no error in the BIA's refusal to provide these applicants with relief. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 174 (2d Cir. 2008). Among other things, we concluded that substantial evidence supported the BIA's factual findings in these three cases.[5] *See id*.

It is reasonable to predict that, if we were to remand the present case, the BIA might again reject Lin's application by reiterating its determination that China has no national policy of forcibly sterilizing those with more than one child and by citing *J-H-S-*, *J-W-S-*, and *S-Y-G-* to support this proposition. However, the BIA's decisions in these cases do not clearly resolve the futility of remand issue presented here. One can infer from the agency's reasoning in *J-H-S-*, *J-W-S-*, and *S-Y-G-* that the documents submitted in those cases were not enough by themselves to establish a well-founded fear of "forced" sterilization pursuant to the definition of "refugee" found in 8 U.S.C. § 1101(a)(42). *See Jian Hui Shao*, 546 F.3d at 174. At the same time, the agency refused to interpret

---

[5] While the denial of the motion to reopen in *S-Y-G-* called for abuse-of-discretion review, we noted separately that we had identified "substantial record evidence supporting the BIA's factual findings." *Jian Hui Shao*, 546 F.3d at 143 n.3.

the definition of refugee as categorically precluding all Chinese asylum applicants from establishing a likelihood of future harm based on their having more than one child. Rather, as the BIA explained in *J-H-S-*,

> the question whether the birth of two children in China gives rise to a well-founded fear of persecution depends on the facts of each case, including, in particular, the details of local family planning policies, proof that an alien violated such policies, and evidence that local enforcement efforts against the violation will rise to the level of persecution. Evidence bearing on all of these factors must, taken together, establish that a reasonable person in the respondent's circumstances would fear persecution if he returned to his home country.

24 I. & N. Dec. at 201; *see also S-Y-G-*, 24 I. & N. Dec. at 251 (emphasizing need for "case-by-case analysis" of applications for asylum based on alien's alleged violation of "family planning policy as established in that alien's local province, municipality, or other relevant area" (citing *J-H-S-*, 24 I. & N. Dec. 196)). This construction of 8 U.S.C. § 1101(a)(42), "which rejects a categorical application of the 'well-founded fear' provision to such claims in favor of case-by-case review," earned *Chevron* deference in our decision in *Jian Hui Shao v. Mukasey*, 546 F.3d at 156–57.[6] Because this construction leaves open the possibility that a Chinese national with two or more children might demonstrate a well-founded fear of future persecution, *id.* at 156, a citation to *J-H-S-*, *J-W-S-*, or *S-Y-G-* alone would not support a categorical rejection of Lin's application.

With respect to the futility analysis applicable in asylum cases such as these, we recognize that the reasoning in *J-H-S-*, *J-W-S-*, and *S-Y-G-* could in many circumstances support a prediction

---

[6] Unlike factual findings on whether a particular applicant has demonstrated a well-founded fear of forced sterilization, the question whether Chinese nationals are *categorically* excluded from the definition of refugee under 8 U.S.C. § 1101(a)(42) is one of statutory interpretation that merits analysis under *Chevron*. *See Jigme Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006); *London v. Polishook*, 189 F.3d 196, 199–200 (2d Cir. 1999).

11

that the BIA would reject an asylum applicant presenting evidence sufficiently similar to that analyzed in these three precedential cases. The problem with making such a prediction in Lin's case, however, is that none of the agency's analysis of Lin's application survives review by this Court.

The IJ's errant finding concerning the likelihood of Lin returning to China with his children was the only ground that the IJ offered for rejecting Lin's asylum application—a conclusion that undercuts this Court's ability confidently to predict that remand would be futile in this case. *See Niang*, 511 F.3d at 149–50; *Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 111 & n.1 (2d Cir. 2006); *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 111 (2d Cir. 2006) ("The more central an errant finding was to the IJ's adverse credibility determination, naturally, the less confident we can be that remand would be futile."). In addition, Lin presented evidence suggesting that his mother and sister-in-law had undergone forced sterilization procedures in China as a result of having violated a family planning policy. Whether this additional evidence would enable Lin to establish that he would face persecution upon removal is the agency's call to make in the first instance. Yet the agency did not make an appropriate determination in this regard. As for the BIA, not only did it expressly reiterate the IJ's erroneously-reasoned conclusion regarding the probability of Lin's children accompanying him to China, but its discussion of additional reasons for its ruling amounted to "cursory, summary or conclusory statements" insufficient to permit this Court to discern the validity of any alternate grounds for denying Lin's application for asylum. *Wei Guang Wang*, 437 F.3d at 275; *Anderson*, 953 F.2d at 806; *cf. Li Hua Lin*, 453 F.3d at 111. As a result, the administrative decisions in Lin's case provide insufficient guidance to permit this Court to conclude that the BIA decisions in *J-H-S-*, *J-W-S-*, and *S-Y-G-* would predictably lead the agency to reject Lin's application. We therefore conclude that remand would not be futile.

12

*Conclusion*

We grant the petition for review, vacate the BIA's October 17, 2005 order, and remand the matter to the BIA for further proceedings, including proceedings before the IJ if appropriate for the development of additional facts.