**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4457
_____

CHUAN MING YANG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A077-052-428 )
Immigration Judge:  Honorable Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011

Before:  FUENTES, VANASKIE and NYGAARD, Circuit Judges

(filed: April 20, 2011 )
_____

OPINION
_____

PER CURIAM

        Petitioner Chuan Ming Yang seeks review of the Board of Immigration

Appeals' ("BIA") final order of removal.  For the following reasons, we will deny the

petition for review.

Chuan Ming Yang is a native and citizen of the People's Republic of China. He arrived in the United States in September 1999, with the assistance of smugglers and was paroled into this country the following month. In 2000, pursuant to a subpoena, Yang provided testimony in criminal proceedings against the smugglers. Yang married in November 2006, and now has two United States citizen children. Yang, as an alien who, at the time of application for admission, lacked a valid entry document, was subject to removal pursuant to section 212(a)(7)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i). He applied for asylum in August 2000, based upon religious persecution (he is a Christian) and because of his illegal departure from China. However, in removal hearings before the Immigration Judge ("IJ") in 2007 and 2008, Yang stated that he no longer wished to pursue his original asylum claims. He submitted an amended asylum application in June 2008, claiming a fear of forcible sterilization on account of the births of his two United States citizen children. In addition, during a July 2008 hearing, Yang added claims that he fears economic persecution due to his violation of China's family planning laws and that he fears persecution for having testified against the smugglers in 2000.

The IJ denied Yang's applications for relief in an oral decision issued on July 29, 2008. The IJ found that Yang lacked credibility, failed to corroborate certain aspects of his claims, and failed to satisfy his burden of proof. Yang appealed. The BIA dismissed Yang's appeal on November 6, 2009.

In a detailed opinion, the BIA concluded that Yang failed to meet his burden of establishing an eligibility for asylum on the basis of his having violated China's family

2

planning policies.  After noting that the record documentary evidence regarding the conditions in China and Yang's locality in particular (e.g., Fujian Province) is the same, or contained the same information, as the evidence the BIA and this Court have previously considered, the BIA concluded that such evidence does not establish that Yang's fear of forcible sterilization is an objectively reasonable one.  See BIA's Decision of 11/6/09 at 2 (citing In re J-W-S-, 24 I. & N. Dec. 185 (BIA 2007); In re S-Y-G-, 24 I. & N. Dec. 247 (BIA 2007); In re C-C-, 23 I. & N. Dec. 899 (BIA 2006); Yu v. Att'y Gen., 513 F.3d 346 (3d Cir. 2008)).

The BIA rejected Yang's contention that his case was distinguishable, and that a statement from his sister and a letter from his local Village Committee constituted adequate objective evidence to show that his fear of being forcibly sterilized was well-founded.  In addition to finding that the statement from Yang's sister lacked sufficient details under In re T-Z-, 24 I. & N. Dec. 163 (BIA 2007),  to establish that her sterilization procedure was done by "force," the BIA found that Yang's sister and the other individuals Yang knew to be sterilized were not similarly situated to him insofar as they were not individuals who returned to China with two foreign born children.  The BIA found no other reliable objective evidence included in the record  to show that others like Yang, who have more than one U.S. born child, have been forced to undergo sterilization upon their return to China.  The BIA likewise found that the IJ reasonably gave little weight to the Village Committee's letter given that it was not authenticated, it was not the original, and the author was not identified.

Recounting its determination in In re J-W-S-, 24 I. & N. Dec. at 191, that the

3

sanctions imposed upon a returnee in Yang's position "would be fines or other economic penalties," see BIA's Decision at 3, the BIA concluded that Yang's failure to mention his inability to pay a $7,000-$8,000 fine in either his amended asylum application or in any of the statements from his wife or other family members rendered suspect his belatedly raised claim that he has a genuine subjective fear of economic persecution. The BIA further found that Yang failed to provide any reasonably available objective evidence to aid in evaluating his personal financial circumstances in relation to the fines he believed he would face upon his return to China should he decide to enter his children into the household registration so that they would be entitled to receive government benefits. Given Yang's failure to meet his burden of showing a subjective and objective fear of economic harm that would amount to persecution, the BIA affirmed the IJ's determination that Yang did not establish a well-founded fear of economic persecution on account of a protected ground.

Yang's contention that he is eligible for asylum as a member of a particular social group, i.e., those who have testified against smugglers in criminal proceedings, fared no better. Once again, the BIA emphasized Yang's failure to specifically indicate his alleged fear of the smugglers in his amended asylum application and in the statements of his family members. Aside from its concern with these omissions, the BIA placed special emphasis on the fact that Yang did not dispute on appeal the IJ's determination that he provided no evidence whatsoever "establishing that the Chinese government would be unable or unwilling to control, or to protect him from these smugglers." Id. At 4.

Having determined that Yang failed to establish past persecution or a well-

4

founded fear of future persecution on account of a protected ground, the BIA concluded that the IJ properly denied Yang's application for asylum. Because Yang failed to satisfy the lower burden of proof for asylum, the BIA further concluded that he could not meet the higher burden of proof for withholding of removal. Finally, the BIA agreed with the IJ that Yang failed to show that he is likely to be tortured upon his return to China. Yang filed a timely petition for review.

On review, Yang challenges both the IJ's adverse credibility determination and the BIA's substantive rulings. We need not address the adverse credibility determination because the substantive rulings are independently dispositive and Yang's challenges to those rulings lack merit. We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA "issue[d] its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." Catwell v. Att'y Gen., 623 F.3d 199, 205 (3d Cir. 2010), citing Sheriff v. Att'y Gen., 587 F.3d 584, 588 (3d Cir. 2009). "We review factual findings, including findings of persecution and fear of persecution, under the substantial evidence standard." Sandie v. Att'y Gen., 562 F.3d 246, 251 (3d Cir. 2009). "Under this deferential standard, findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation marks omitted).

Yang contends that the IJ and BIA erred in concluding that his claim based on China's family planning policy is precluded by its previous decisions and relevant precedent from this Court. Yang further asserts that the BIA failed to give sufficient weight to his evidence regarding the enforcement of the family planning policy in his hometown. We reject petitioner's contentions as meritless.

We recently disposed of issues very similar to those raised by Yang in <u>Chen v.</u>

<u>Att'y Gen.</u>, -- F.3d --, 2011 WL 923353 (3d Cir. Mar. 18, 2011). Our decision in <u>Chen</u>

began with a recap of the BIA's "comprehensive discussion" in <u>In re H-L-H & Z-Y-Z-</u>,

25 I. & N. Dec. 209 (BIA 2010). The respondents in <u>In re H-L-H & Z-Y-Z-</u> were also

natives and citizens of China from the Fujian Province, who had two U.S. citizen children

and claimed a fear of forcible sterilization and significant fines in accordance with

China's family planning policies should they be returned to their native country. In

considering whether the female respondent had shown that she possessed a well-founded

fear of forcible sterilization or other sanctions rising to the level of persecution, the BIA

"noted that State Department reports on country conditions, including the *Profiles of*

*Asylum Claims & Country Conditions*, are 'highly probative evidence and are usually the

best source of information on conditions in foreign nations.'" <u>Chen</u>, 2011 WL 923353, at

\*2, quoting <u>In re H-L-H & Z-Y-Z-</u>, 25 I. & N. Dec. at 213. Having considered the same

State Department report on country conditions contained in the instant record, e.g., the

May 2007 *China: Profile of Asylum Claims and Country Conditions*, the BIA concluded

the following:

> [T]he evidence presented "indicates that physical coercion to achieve
> compliance with family planning goals is uncommon and unsanctioned by
> China's national laws and that the overall policy is much more heavily
> reliant on incentives and economic penalties." With regard to those
> incentives and penalties, the BIA held that "the respondent has not shown
> that her locality represents a current exception to the general rules in which
> the Chinese Government relies on a variety of measures short of
> persecution to enforce its population control policy."

<u>Id.</u> At \*3, quoting <u>In re H-L-H & Z-Y-Z-</u>, 25 I. & N. Dec. at 218.

6

As in <u>Chen</u>, we discern no error on the part of the BIA in concluding that Yang does not have a well-founded fear of future persecution, and find substantial evidence in the record in the instant case to support the BIA's denial of Yang's asylum claim. Although Yang is correct in his assertion that a citation to BIA precedent alone does not support a "categorical rejection" of his asylum application, <u>see</u> Pet.'s Br. At 10, <u>quoting</u> <u>Xiao Kui Lin v. Mukasey</u>, 553 F.3d 217, 224 (2d Cir. 2009), such is not the case here. While recognizing that Yang presented much of the same record documentary evidence previously considered and found lacking by both this Court and the BIA, the BIA once again specifically concluded that the record evidence fell short of establishing that Yang's fear of forcible sterilization for having fathered two U.S. citizen children was objectively reasonable. <u>See</u> BIA's Decision at 2.

Yang's contention that the IJ and BIA failed to give sufficient weight to evidence he submitted regarding the enforcement of the family planning policy in his hometown is meritless. Even aside from the BIA's finding regarding the sufficiency of Yang's sister's statement, the BIA correctly noted that neither Yang's sister nor any one of the other individuals known by Yang to have been sterilized was similarly-situated to him. None had returned to China after having fathered two foreign-born children. <u>See</u> <u>id.</u> At 2, <u>citing</u> Hr'g. Tr. 34-46, Oct. 17, 2007 (A. R. at 142-44).[1]

---

[1]   We agree with respondent's contention that Yang failed to exhaust administrative remedies with respect to any argument he wishes to advance regarding the letters authored by Jin Fu Chen and Jiang Zhen Chen, and apparently submitted on behalf of asylum applicants named Jin Tuan Chen and Nansheng Chen. These statements were purportedly from individuals who claim to have had children outside China (specifically, in Japan), and were forcibly sterilized upon returning to China. According to the BIA,

7

Additionally, the BIA agreed with the IJ's decision to give little weight to the Village Committee letter, which is unauthenticated. While it is true that a failure to authenticate a document under 8 C.F.R. § 287.6 does not warrant per se exclusion, and that an applicant is permitted to prove authenticity in another manner, see Liu v. Ashcroft, 372 F.3d 529, 533 (3d Cir. 2004), Yang made little attempt to authenticate the Village Committee letter (of which he only submitted a photocopy). Although the statement submitted by Yang's father does indicate that he obtained the "notice" from the local Village Committee, the BIA observed that it provides no information as to who served as Yang's father's contact in the Village Committee or who authored the letter. We thus find no fault with the BIA's conclusion that the IJ acted reasonably in giving "little reliable and probative weight" to the Village Committee letter. See Chen, 2011 WL 923353, at *4. Moreover, as the BIA correctly noted, the Village Committee letter does not state that Yang would be sterilized by force or specify the consequences if he were to refuse sterilization. Thus, the BIA's finding that Yang does not have a well-founded fear of forcible sterilization has substantial record support.

As for Yang's challenges to the BIA's findings that he failed to established that he will be subjected to fines rising to the level of persecution or to persecution as a member of a particular social group, we find his contentions to be meritless and dispose of them

the IJ did not rely upon these documents because they were unauthenticated and Yang made no effort to identify who the individuals were or how he obtained their statements. The BIA specifically noted that Yang did not challenge this aspect of the IJ's decision on appeal. See BIA Decision at 2, n.5. Accordingly, Yang may not now be heard to advance that argument here. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005).

with little discussion. Even putting aside the BIA's doubts regarding whether Yang's belatedly raised claim of economic persecution was genuine, we do not hesitate to conclude that substantial evidence supports the BIA's finding that Yang failed to provide any "reasonably available objective evidence that would have aided in evaluating what his personal financial circumstances are in relation to the fines" he believes he faces upon his return to China. See BIA's Decision at 3. Substantial evidence likewise supports the BIA's finding that Yang failed to meet his burden of demonstrating a subjective and objective fear of economic harm so severe as to constitute persecution. See Chen, 2011 WL 923353, at *4 (noting that "the 2007 State Department Country Report on Human Rights Practices for China … reflects a variation in the amount of social compensation fees and the severity of hardship that the Chinese government imposes for a violation of family planning policy."). We cannot conclude that the record presented – which contains no evidence of the personal financial circumstances of a petitioner who has been in this country for over eleven years and has secured employment during that time – compels a finding that Yang faces the prospect of fines and an ensuing economic disadvantage so severe that his life or freedom is threatened. See Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005).

The BIA found Yang's claim that he was eligible for asylum as a member of a particular social group (e.g., those who has testified against smugglers in criminal proceedings) deficient on numerous grounds. Dispositive of the claim on review, however, is the fact that Yang failed to dispute on appeal to the BIA the IJ's determination "that he provided no evidence establishing that the Chinese government

9

would be unable or unwilling to control, or to protect him from these smugglers." BIA Decision at 4, citing Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005)(noting that harm perpetrated by civilians does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control). Yang cannot complain for the first time on review to this Court that the IJ did not afford him a sufficient opportunity to provide evidence in support of this claim given that he did not raise the claim as a basis for asylum until his 2008 hearing was underway, and this being so despite his testimony that his family in China had been suffering harassment and receiving threats for more than two years prior to his hearing. See Hr'g. Tr. At 49 (A. R. 158).

Of course, having failed to establish his eligibility for asylum, the BIA correctly concluded that Yang could not satisfy the higher burden required for withholding of removal. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Finally, Yang's failure to demonstrate that he would more likely than not be forcibly sterilized if removed to China is fatal to his CAT claim. See Berishaj v. Ashcroft, 378 F.3d 314, 332 (3d Cir. 2004). We have fully considered Yang's other challenges – including his contention that the BIA erred in distinguishing foreign-born children for purposes of China's family planning policy – and find them to be lacking in merit. See Chen, 2011 WL 923353, at *4. Accordingly, we dispose of them without further discussion.

For the foregoing reasons, we deny the petition for review.