Malonda v. Barr

BIA
Connelly, IJ
A209 150 722

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of November, two thousand twenty.

PRESENT:
> GUIDO CALABRESI,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

DIEKA MALONDA,
> *Petitioner,*

v.                                                    18-2618
                                                      NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Dieka Malonda, pro se, Patterson, CA.

FOR RESPONDENT:          Jeffrey Bossert Clark, Acting Assistant Attorney General; Paul Fiorino, Senior Litigation Counsel; Judith O'Sullivan, Trial Attorney, Office of Immigration Litigation, United States

Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this order.

Petitioner Dieka Malonda, a native and citizen of the Democratic Republic of Congo ("DRC"), seeks review of an August 16, 2018 decision of the BIA, affirming a September 22, 2017 decision of an Immigration Judge ("IJ"), denying Malonda's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Dieka Malonda,* No. A209 150 722 (B.I.A. Aug. 16, 2018), *aff'g* No. A209 150 722 (Immigr. Ct. Batavia, N.Y. Sept. 22, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, *i.e.,* minus the resettlement finding that the BIA declined to reach. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). We review the

2

agency's factual findings under the substantial evidence standard, which treats such findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *accord Gjolaj v. Bureau of Citizenship & Immigr. Servs.*, 468 F.3d 140, 143 (2d Cir. 2006) (reviewing the question of nexus for substantial evidence). However, we will "vacate and remand for new findings . . . if the agency's reasoning or its factfinding process was sufficiently flawed." *Lin v. Mukasey*, 553 F.3d 217, 220 (2d Cir. 2009).

Malonda asserted that, in 2005, soldiers in the DRC attacked him, raped and killed three of his sisters, and abducted his father and brother on account of his father's political opinion. The IJ found that Malonda failed to establish either that he suffered past persecution on account of political opinion based on this attack or that he has a well-founded fear of future persecution on account of political opinion. In particular, as to past persecution, the IJ concluded that "despite the voluminous documents respondent has presented and his detailed testimony, he has not provided this Court with a basis to conclude that [the]

3

alleged attack that happened in 2005 was motivated on account of political opinion." Certified Admin. Record ("CAR") at 97-98. The BIA agreed.

As set forth below, we conclude that the agency may have overlooked material evidence Malonda offered to support his claim that his father's membership in the opposition party in the DRC and corresponding political opinions were the motivation for the attack on Malonda and his family. Thus, remand is necessary for the agency to fully consider the evidence.

To establish eligibility for asylum and withholding of removal, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *id.* § 1231(b)(3)(A); *see also Matter of C-T-L-*, 25 I. & N. Dec. 341, 348 (B.I.A. 2010). There may be "more than one motive for mistreatment, as long as at least one central reason for the mistreatment is on account of a protected ground." *Acharya v. Holder*, 761 F.3d 289, 297 (2d Cir. 2014) (quotation marks omitted). To demonstrate that persecution

4

is on account of an applicant's political opinion, the applicant must "show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political belief," rather than merely the persecutor's own opinion. *Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005). The agency's findings regarding the persecutor's motives and the nexus between the harms and a petitioner's protected status are reviewed for substantial evidence. *See Gjolaj*, 468 F.3d at 143.

Respondent argues that substantial evidence supports the BIA's conclusion because Malonda "could not tell whether three uniformed men, who invaded his father's home in the Congo in 2005 and caused his family great harm, were rebels or government soldiers." Respondent's Br. at 16. Malonda's inability to identify the uniformed men, however, does not end the inquiry. As we recently reiterated in *Hernandez-Chacon v. Barr*, "[t]he BIA has explained that persecution based on political opinion is established when there is 'direct or circumstantial evidence from which it is reasonable to believe that those who harmed the applicant were in part motivated by an assumption that [his] political

5

views were antithetical to those of the government.'" 948 F.3d 94, 102 (2d Cir. 2020) (quoting *Matter of S-P-*, 21 I. & N. Dec. 486, 494 (B.I.A. 1996)). Thus, the BIA was required to consider whether Malonda established, through *circumstantial* evidence, that the attack on him and his family in 2005 was based upon his father's political opinion.

At the hearing, Malonda testified that he believed that the uniformed soldiers who conducted the attack were from the government. CAR at 297 ("[W]e've got a lot of uniforms, you know, in the Congo. We've got police. We've got army. We've got different groups, and presidents, special group of soldiers, but they, they were working for the government I can say."). When asked further about the attackers' identity and motivation, Malonda testified that he believed that the attackers were government soldiers who attacked him and his family on account of his father's political opinion based, in part, on the fact that the soldiers did not attack any other families living on the street and his father, who was a medical doctor, was the only person on the street who was an active member of an opposition political party:

> Yeah, because since my father was in an opposition and I don't think it was by mistake that we were the only one who were attacked. They basically knew my political, my father's political opinion. That's, [sic] was the main reason that he was, that he was attacked or that we were attacked as a family because if it was only because of rebels and so forth, there were a lot of people on the street and we were the only victims.

CAR at 326; *see also* CAR at 297 ("[W]e were living in the street and there was a lot of doctors and we were the only one who were victims of such attack . . . ."). In particular, he noted how the armed soldiers, upon entering only his family's home, attacked him, raped and killed three of his sisters, and abducted his father and brother. On the issue of whether it possibly could have been rebels who conducted the attack, Malonda in a letter to the IJ after he provided this testimony, further emphasized that rebel forces could not reach the area in which his family was living "because it was protected by the state security forces and the government."[1] CAR at 355. In our view, the agency failed

---

[1] Although not referenced by the IJ, the BIA suggests that an inference can be drawn that it was rebels, rather than soldiers, who conducted the attack by noting that "the record reflects that there was widespread violence and civil strife in the DRC during this period and for many years before and since." CAR at 2 (citation omitted). That suggestion,

7

to adequately consider whether this evidence, regarding his father's active political opposition to the government and the specific targeting of his house for the attack, could itself provide a reasonable inference that the uniformed attackers were not rebels, but rather were government soldiers retaliating against the family based upon his father's political opinion.

Moreover, the BIA also incorrectly states that this testimony about his family being the sole target of the soldiers was the only evidence Malonda offered to support his argument regarding the motivation for the attack. *See* CAR at 2 ("While [Malonda] testified that he believed his family was targeted because of his father's political opinion in

---

however, does not account for the situation in Malonda's particular region, which he asserted was protected by the government and, more importantly, does not explain why the rebels would have targeted only Malonda's house for such violence. *See, e.g.*, *Margosyan v. Barr*, 799 F. App'x 497, 499-500 (9th Cir. 2020) (remanding on the nexus between petitioner's persecution and a protected ground where "[t]he circumstantial evidence in the record raises an inference that the police officers sought to punish or retaliate against [petitioner] for her husband's political activities, rather than to settle a personal score with her husband, for which there was no evidence"(internal quotation marks and citations omitted)).

8

opposition to the government, the only basis he provided for this belief was that his family was the only one that was attacked on his street on that occasion." (citation omitted)). The respondent reiterates that erroneous assertion on appeal. *See* Respondent's Br. at 16 (noting that Malonda's belief was "speculative, unsupported by record evidence, and based only on his observation that theirs was the only neighborhood home invaded").

Malonda, however, provided additional circumstantial evidence from which it could be inferred that his family was attacked by government soldiers, not rebels. More specifically, Malonda testified that, after his brother was abducted during the attack, his brother was taken to a camp where "they were trained to become soldiers to fight again [sic] rebels." CAR at 324-25. Malonda repeated this assertion in his testimony multiple times. *See* CAR at 327 ("[My brother] explained that he was taken to a camp where they were trained in order to fight against the rebels, but basically myself I didn't know who they were."); *see also* CAR at 327 ("[My brother] explained that it was just a, a group of soldiers who were fighting against rebels. So, if they

9

were fighting against rebels, we understand that it's the government who are fighting against the rebels.").

Such testimony could further support an inference regarding the identity and motive of the attackers. Although the IJ referenced that Malonda testified that his brother was taken to a military camp and trained to "become a soldier," CAR at 98, it concluded that no evidence in the record suggested the identity of the brother's captors. However, the IJ omitted that Malonda also testified that his brother was trained to fight "against the rebels," CAR at 327, which plainly supports an inference that Malonda's brother was taken by the government, *see also* CAR at 355 (letter from Malonda to the IJ wherein he states that his brother was taken to be trained to "fight against rebels" and that "[r]ebels can not fight each other, while the state security forces does"). Thus, the IJ's analysis was incomplete, and appears to evaluate Malonda's testimony in piecemeal fashion, rather than in light of the totality of the evidence. Moreover, the BIA appears to have completely overlooked this particular evidence in affirming the IJ's decision.

We recognize that it is "'emphatically not our role' to

10

consider whether the petitioner's explanation, which the IJ had rejected, is more plausible than the record-supported inference the IJ had drawn." *Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007) (quoting *Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005)). However, it is well within our role to remand when we find, as we do here, that the agency may not have adequately considered the various aspects of the petitioner's testimony and evidence, in their totality, in deciding whether "the harm was motivated, in part, by an actual or imputed protected ground." *Aliyev v. Mukasey*, 549 F.3d 111, 116 (2d Cir. 2008) (internal quotation marks omitted).

Accordingly, we remand to the agency to more fully assess the record regarding past persecution and explain its decision. *See Chen v. U.S. I.N.S.*, 359 F.3d 121, 127 (2d Cir. 2004) ("[W]here the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts, we may remand for reconsideration or rehearing."); *see also Escobar v. Holder*, 657 F.3d 537, 544 (7th Cir. 2011) ("Even though our review is deferential, the [Board] may not simply overlook evidence in the record that

supports the applicant's case." (alteration in original) (internal quotation marks omitted)).

A petitioner who demonstrates past persecution benefits from the presumption that he or she faces a threat of future persecution for purposes of either asylum or withholding of removal. 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(1)(i) (withholding of removal); *see also Baba v. Holder*, 569 F.3d 79, 86 (2d Cir. 2009) ("The law is clear that a showing of past persecution shifts the burden to the government on the question of the petitioner's well-founded fear of future persecution."). Because the agency found that Malonda failed to establish past persecution, it did not give him the benefit of a presumption of a well-founded fear of future persecution. As a result, the IJ and the BIA placed the burden on Malonda to prove a well-founded fear of future persecution. However, because Malonda may be entitled to the benefit of the presumption depending upon the agency's determination of past persecution after its re-assessment of the evidence, this issue must be revisited upon remand.

Regardless of whether Malonda ultimately benefits from the presumption on remand with respect to the issue of future

persecution, we note that the BIA also should consider the threatening telephone call that Malonda referenced in his testimony, which was not addressed in its decision. In particular, Malonda stated in his testimony that, after protesting the Congolese government while in South Africa, he received a telephone call from an unidentified individual who told him never to protest again or he would be unable to return to South Africa (where he moved in 2006 after leaving the DRC). Malonda explained that, "I think because [other protestors] were tortured they had to like to, to disclose maybe the names of the people, but I didn't really know or I'm not really sure about how they found out, but what amazed me it was because I received a phone call a few days after that protest whereby I was told not to go out and protest again or else I wouldn't get my, I wouldn't take my flight back to South Africa." CAR at 330; *see also* CAR at 322, 331. The IJ and the BIA relied heavily on Malonda's trip to the DRC for the renewal of his visa in 2015 without incident, but we have said that:

> The simple fact of a safe return on a particular occasion does not negate the potential of future harm. Nothing in the regulations requires an

applicant to show that she would be immediately persecuted upon return, that persecution would be likely to occur within some short time span, or that it would occur in regular intervals. . . . While return trips may provide some evidence of a relevant change in circumstances, they do not supply the requisite preponderance of evidence.

*Kone v. Holder*, 596 F.3d 141, 149–50 (2d Cir. 2010). Accordingly, we also remand to allow the agency to adequately consider Malonda's evidence in full on the issue of future prosecution, including the telephone call. *See, e.g.*, *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342-43 (2d Cir. 2006) (finding that the "IJ . . . did not evaluate, or even meaningfully acknowledge" testimony and evidence favorable to the petitioner, "and [that] we must therefore give the IJ [an] opportunity to do so"). The remand, as it relates to future persecution or torture, applies to Malonda's claims for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the CAT.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this

opinion.    All pending motions and applications are DENIED and

stays VACATED.

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe,
                              Clerk of Court