*Sherpa v. Bondi*
BIA
Loprest, IJ
A206 291 442

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14ᵗʰ day of March, two thousand twenty-five.

PRESENT:
　　　　DEBRA ANN LIVINGSTON,
　　　　　　*Chief Judge,*
　　　　MYRNA PÉREZ,
　　　　MARIA ARAÚJO KAHN,
　　　　　　*Circuit Judges.*
_____

NINGMA DORJE SHERPA,
　　　　*Petitioner,*

　　　v.　　　　　　　　　　　　　　　　　22-6445
　　　　　　　　　　　　　　　　　　　　　NAC

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
　　　　*Respondent.*
_____

**FOR PETITIONER:** KHAGENDRA GHARTI-CHHETRY, Chhetry & Associates, P.C., New York, NY.

**FOR RESPONDENT:** CHRISTINA R. ZEIDAN, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Ningma Dorje Sherpa, a native and citizen of Nepal, seeks review of an August 31, 2022 decision of the BIA affirming a June 24, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ningma Dorje Sherpa,* No. A206-291-442 (B.I.A. Aug. 31, 2022), *aff'g* No. A206-291-442 (Immig. Ct. N.Y. City June 24, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, and therefore do not assess the adverse credibility and time-bar grounds that the BIA declined to rely on. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *INS v. Ventura*, 537 U.S. 12, 15-17 (2002). We review factual findings for

2

substantial evidence and questions of law *de novo*. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant has the burden to establish past persecution or a well-founded fear of future persecution. *Id.* § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a), (b). Where, as the agency assumed here, an applicant has shown past persecution, there is a presumption of future persecution. 8 C.F.R. § 1208.13(b)(1). The Department of Homeland Security ("DHS") can rebut the presumption by establishing, by a "preponderance of the evidence," *id.* § 1208.13(b)(1)(ii), that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," *id.* § 1208.13(b)(1)(i)(A). In assessing whether DHS has rebutted the presumption, the agency must "conduct an individualized analysis of how changed conditions would affect the specific petitioner's situation" and "cannot rely in a conclusory fashion on information in a State Department country report." *Passi v. Mukasey*, 535 F.3d 98, 101–02 (2d Cir. 2008) (internal citation and marks omitted). Substantial evidence supports the agency's finding that circumstances in Nepal have fundamentally changed, such

3

that Sherpa no longer has a well-founded fear of persecution by Maoists on account of his membership in the Nepali Congress Party ("NCP"), or lack of support for the Maoist cause.

Sherpa identified the following past harm. He stopped attending school in sixth grade (in 1999) when Maoists threatened to burn down the school. In 2004, after he became a monk, Maoists came to his house, attempted to recruit him, and beat him. In 2007, he joined the NCP, and in 2011, Maoists beat him and threatened his life because he was opposing a Maoist rally. He left Nepal in 2013. He testified that he feared returning to Nepal because of a violent Maoist splinter group and then stated that Maoists went to his parents' home looking for him years after he left Nepal, once in 2017 and once in 2019.

First, the agency did not err in taking administrative notice of the State Department reports or the 2017 election. *See Xiao Kui Lin v. Mukasey*, 553 F.3d 217, 222 n.4 (2d Cir. 2009) ("[T]he BIA has the power to take administrative notice of official reports such as those from the State Department." (citing 8 C.F.R. § 1003.1(d)(3)(iv))). The agency cited these reports for the proposition that overall Nepal's political climate and human rights situation has improved since the Maoist-led insurgency ended in 2006, including the free and fair 2017 national

4

election. *Compare* U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., *Nepal*, *in Country Reports on Human Rights Practices* (2007) (noting that Nepal is in a "state of political transition" following the 2006 peace agreement ending the insurgency), *with* U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., *Nepal*, *in Country Reports on Human Rights Practices* (2018) (describing Nepal as a "federal democratic republic," reporting that the 2017 national elections were "generally well conducted," and that "civilian authorities maintained effective control of security forces."). This was not an error. Further, the agency did not heavily rely on these reports, as it also considered Sherpa's submitted reports and did not find them contradictory to the State Department reports. *See* C.A.R. 176-77.

The agency did not specifically discuss Sherpa's claims that Maoists searched for him at his parents' home after his departure from Nepal. But while Sherpa argued on appeal to the BIA that the IJ erred by not considering these visits, he does not raise such an explicit argument here; to the contrary, his brief does not mention the 2019 incident or discuss either incident when challenging the fundamental change finding. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments

constitutes abandonment." (internal citations and marks omitted)).

In any event, Sherpa does not have a well-founded fear based on these two incidents. The July 2017 visit was before the November and December 2017 elections that resulted in a coalition government. As to the 2019 visit, the country conditions evidence supports the agency's conclusion: violence peaked between 1996 and 2006; a Maoist splinter group committed only limited violence[1]; the government declared the Maoist group a criminal organization and made arrests to curb their activities. Sherpa also testified that he lived safely in Nepal between December 2011 and his 2013 departure, and that during at least part of that period he lived at his parents' home, and worked at his parents' tea stall in a public place. The fact that Sherpa was not harmed during that period further supports the agency's conclusion that his fear is no longer objectively reasonable given the additional improvements in conditions since he left in 2013. *See Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

---

[1] In 2019, the Maoist group apologized for a bombing targeting a telecommunications company that resulted in one death, for which the group apologized because "it had no intention of targeting the general public." CAR at 507-509.

The agency's conclusion that conditions have changed is dispositive of asylum, withholding of removal, and CAT relief. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(A) (providing that asylum claim fails if DHS shows "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution"), 1208.16(b)(1)(i)(A) (same as to withholding), (c)(2) (placing burden on CAT applicant to show that torture is "more likely than not").

For the foregoing reasons, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court