**NOT PRECEDENTIAL**

UNITED  STATES  COURT  OF  APPEALS
FOR  THE  THIRD  CIRCUIT
_____

No. 14-3018
_____

EN SHI  WU,
AKA  Guo En  Shi,

Petitioner

v.

ATTORNEY  GENERAL  UNITED  STATES  OF  AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-098-919)
Immigration Judge:  Honorable Michael W. Straus

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November  3, 2014

Before:  FUENTES,  SHWARTZ  and ROTH,  <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 9, 2014)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se petitioner En Shi Wu seeks review of the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will grant the petition for review in part, dismiss it in part, and deny it in part, and we will vacate the BIA's order and remand for further proceedings.

I.

Wu is an ethnic Korean and a citizen of China. In 2008, she entered the United States without inspection and was placed in removal proceedings for failing to possess valid entry documents. In April 2009, Wu conceded her removability before an Immigration Judge ("IJ") and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

After several delays, including a transfer of the case from Texas to New Jersey, Wu's merits hearing before the IJ occurred on March 12, 2012. Wu asserted that she had been persecuted in China due to her political opinion because she and her husband had harbored North Korean refugees. When the refugees were apprehended by the Chinese police, Wu and her husband believed that they themselves were unsafe. Wu and her husband fled to another part of China, where they lived for four months until they could secure passage to the United States. Wu believes that she will be punished if she returns to China because she harbored North Korean refugees.

Wu also alleged that if she returned to China, she would be persecuted because she converted to Christianity soon after arriving in the United States. She attends a non-denominational Protestant church with a largely Korean congregation. She testified that

2

she will continue to practice Christianity in China but will not attend a government-sanctioned church. Wu testified that she knows of one person who got into trouble after joining an underground church in China. Wu's pastor testified on her behalf, stating that Wu is a devoted Christian and that he believes she would continue her religious activities wherever she lives. In support of her claim, Wu submitted several documents, including the United States State Department's 2009 International Religious Freedom Report for China and its 2007 Profile of Asylum Claims and Country Conditions.

The IJ denied Wu's claims for relief. The IJ first found that Wu had not suffered any past persecution, because there was "no evidence that she was ever harmed" due to hiding North Korean refugees. (A.R. at 68.) The IJ also determined that Wu did not establish that she had a well-founded fear of future persecution on account of her hiding North Korean refugees, because there was no "basis to indicate that the Chinese government in this case ascribed or imputed any sort of political opinion" on Wu. (Id. at 69.)

The IJ also rejected Wu's claim that she was eligible for relief due to a fear of future persecution based on her conversion to Christianity. The IJ determined that the background materials indicated that there are "many millions of Chinese who attend underground or house churches and that they are treated unevenly throughout the country," (id. at 70), and the IJ "did not see anything specifically to indicate that ethnic Koreans going to Korean Protestant churches are specifically targeted in China," (id. at 71). The IJ determined that there was "simply not enough evidence to show that merely

3

being a Christian and wanting to go to an unregistered Protestant church results in a finding that it is more likely than not [Wu] would be persecuted for that." (Id.) Accordingly, the IJ denied Wu's claims for asylum and withholding of removal. The IJ also denied Wu's CAT claim, concluding "that she simply has failed to meet her burden of proof that it is more likely than not she would be tortured." (Id. at 73.)

On appeal to the BIA, Wu, through counsel, challenged only the IJ's rejection of her religion-based claims. On May 21, 2014, the BIA affirmed the IJ's decision and dismissed Wu's appeal. The BIA held that Wu had not demonstrated a reasonable possibility that she would be singled out for persecution based on her practice of religion, nor had she demonstrated a "systematic, pervasive or organized pattern or practice of persecution of Protestants or Christians in China based upon this record." (Id. at 3.) The BIA also agreed with the IJ that Wu had not established that she was eligible for CAT protection.

Wu timely petitioned this Court for review.

II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We generally review only the BIA's decision, but may look to the IJ's decision insofar as the BIA defers to it. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We review an agency's factual findings, which include its findings as to whether a petitioner has demonstrated a well-founded fear of future persecution, for substantial evidence. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006).

4

Under this deferential standard of review, we must uphold those findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The Government argues that Wu has waived her religion-based claims, and that she failed to exhaust her claims relating to the North Korean refugees because she did not present them to the BIA. We agree that Wu did not exhaust the latter set of claims; therefore, we do not have jurisdiction to consider them. See Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) (citing 8 U.S.C. § 1252(d)(1)).[1] We also agree that Wu has waived her religion-based CAT claim by failing to raise it before this Court. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). However, although Wu's brief is not a model of clarity, under the liberal construction afforded to pro se filings, see Higgs v. Att'y Gen., 655 F.3d 333, 339-40 (3d Cir. 2013), we find that she has not waived her religion-based future persecution claim.

Where, as here, a petitioner seeking asylum does not allege past persecution, she must demonstrate a well-founded fear of future persecution. See Chavarria, 446 F.3d at 516. For this fear to be well-founded, it "must be both subjectively and objectively reasonable." Dong v. Att'y Gen., 638 F.3d 223, 228 (3d Cir. 2011). "To establish objective reasonableness, [a] petitioner[] must show that a reasonable person in [her] circumstances would fear persecution if returned to [the country in question]." Chen v.

---

[1] To the extent that Wu attempts to raise new claims in her submissions to this Court, such claims are outside the scope of our review. See Abdulrahman, 330 F.3d at 594-95.

Att'y Gen., 676 F.3d 112, 115 (3d Cir. 2011) (internal quotation marks omitted). To satisfy the objective prong, the petitioner must show either that (1) she would be singled out for persecution on account of a protected ground, or (2) there is a pattern or practice of persecuting similarly situated people on account of a protected ground. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005).

As to Wu's fear of future persecution due to her religion, the BIA stated that "[t]here is no clear error in the [IJ]'s finding that [Wu] has not established that Chinese authorities presently are aware of her religious conversion in the United States, or likely would become aware of her religious practice after her return to China." (A.R. at 3.) The IJ's decision, however, made no such finding, and the BIA was not permitted to make that finding in the first instance. See 8 C.F.R. § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals."). Nevertheless, it appears that the BIA mistakenly relied on that purported finding when it concluded that Wu "has not demonstrated a reasonable possibility that she would be singled out individually for persecution based on her practice of religion after her return to China." (Id.) Because a petitioner may prove an objective fear of future persecution by demonstrating a pattern or practice of persecution *or* that she will be singled out for persecution, it was necessary that the BIA's determination as to both prongs be supported by substantial evidence. However, it appears that the BIA based its decision concerning whether Wu would be singled out for persecution on its mistaken

6

reading of the IJ's opinion. While we do apply the harmless error doctrine in immigration proceedings, we cannot say that that the BIA's error in this case was harmless. See Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (holding that an error is harmless where it is "highly probably that the error did not affect the outcome of the case"). We will thus vacate the BIA's final order of removal and remand so that the BIA may re-evaluate Wu's claim that she would be singled out for persecution due to her religion.

On remand, the BIA need not revisit its finding that Wu did not establish a pattern or practice of persecution against Protestants or Christians in China, as substantial evidence in the record supports the BIA's conclusion. To establish such a claim, a petitioner must demonstrate that persecution of the group is "systemic, pervasive, or organized." Lie, 396 F.3d at 537 (quotation marks omitted). The evidence in the Administrative Record shows that the Chinese government's treatment of religious groups varies by region, and that, in some instances, unregistered churches are quietly tolerated by Chinese authorities. While there are examples of abuse and repression of some unregistered churches, we cannot say that the record compels a finding that there is a pattern or practice of persecution in China.

For the foregoing reasons, we will grant the petition for review in part, dismiss it in part, and deny it in part. We will vacate the BIA's final order of removal and remand for further proceedings consistent with this opinion.

7