**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2704
_____

FRANCOIS ZEZE BEAVOGUI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the Board
of Immigration Appeals
(A206-285-040)
Immigration Judge:  Patrick J. Ehlers
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 13, 2025

Before: SHWARTZ, MATEY, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: December 15, 2025)
_____

OPINION[*]
_____

MONTGOMERY-REEVES, *Circuit Judge*.

　　Francois Zeze Beavogui seeks review of the Board of Immigration Appeals' (the

"BIA") final order of removal.  Beavogui argues the BIA erred in denying his application

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons explained below, we will deny the petition.

Beavogui, a native and citizen of Guinea, unlawfully entered the United States in 2013. In 2017, the Department of Homeland Security commenced removal proceedings against him. Beavogui concedes removability based on his undocumented entry into the United States. But Beavogui claimed he was persecuted in Guinea on account of his Christian faith by members of the Forêt Sacré, a secret animist religious society.

According to Beavogui, he was inducted into the Forêt Sacré in 1992, when he was ten years old. In 1998, the Forêt Sacré killed Beavogui's father for converting to Christianity. Beavogui converted to Christianity in 2008. In April of 2013, the Forêt Sacré suspected that Beavogui had converted, so members of the group took him to a forest and tortured him there for a week. After Beavogui returned from this ordeal, his mother warned him that the Forêt Sacré would kill him like it had killed his father. She urged Beavogui to leave Guinea, and he fled the country.

In 2021, an Immigration Judge (the "IJ") conducted a merits hearing on Beavogui's removal. There, Beavogui testified that he would be killed if he returned to Guinea. He also testified that it had been about eight years since he had last communicated with anyone in Guinea and that he did not know if members of the Forêt Sacré were still looking for him. The IJ denied Beavogui's application for asylum, withholding of removal, and protection under CAT for lack of credibility, insufficient corroboration of his claims, and failure to otherwise meet his respective burdens of proof.

2

The BIA affirmed. Regarding the applications for asylum and withholding of removal, the BIA held that Beavogui forfeited any challenge to the IJ's finding that he failed to show that Guinean authorities were or are unable or unwilling to control the Forêt Sacré. Accordingly, Beavogui failed to make the requisite showing of either past persecution or a well-founded fear of future persecution. Regarding the application for CAT protection, the BIA held that Beavogui forfeited his CAT claim by failing to challenge the IJ's denial of CAT protection. Because these issues were dispositive, the BIA declined to "address the [IJ's] other bases for denying relief, including those related to credibility, corroboration, nexus, and the respondent's ability to relocate to avoid future persecution." CAR 4 (citing *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976)). Beavogui timely petitioned this Court.[1]

"Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (citation omitted). We review the IJ's decision "to the extent the BIA substantially relied on that opinion." *B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021) (citation and quotation marks omitted). We review both the BIA's and the IJ's decisions if "the BIA 'affirmed and partially reiterated' the IJ's determinations." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)). We review legal questions de novo and factual findings for substantial evidence, deferring to the agency's factual determinations

---

[1] The BIA had jurisdiction to hear Beavogui's appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a).

3

"unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006), *as amended* (Sep. 29, 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)). And "[w]e review the BIA's waiver determinations for an abuse of discretion." *Sanchez v. Att'y Gen.*, 147 F.4th 348, 352 (3d Cir. 2025).

With these standards of review in mind, we address, in turn, each avenue for relief—asylum, withholding of removal, and protection under the CAT.

First, asylum. An undocumented person may qualify for asylum if he has suffered, or has a well-founded fear of suffering, "persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Beavogui alleges violence at the hands of a private society. For that private violence to amount to persecution, "the government must be complicit" in the actions of the Forêt Sacré. *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 88 (3d Cir. 2021). To establish complicity, Beavogui had to show that the government of Guinea was unable or unwilling to control the violence of the Forêt Sacré. *Id.* at 88–90.

The IJ found that Beavogui did not make any such showing. And the BIA held that Beavogui forfeited any challenge to that finding. Nowhere in his opening brief does Beavogui challenge the BIA's holding that he forfeited the unable-or-unwilling-to-control finding. Thus, he has forfeited any argument that the BIA's forfeiture holding was an abuse of discretion. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). Because that holding "was a proper act of discretion, [Beavogui] has not exhausted all available

4

remedies," and we may not review the IJ's unable-or-unwilling-to-control finding.[2] *Sanchez*, 147 F.4th at 352; *see* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if" a petitioner "has exhausted all administrative remedies available to [him] as of right").[3]

Next, withholding of removal. "To qualify for withholding of removal, an alien must establish a 'clear probability of persecution,' i.e., that it is more likely than not, that s/he would suffer persecution upon returning home." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) (citation omitted). "Since this standard is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." *Id.* Because Beavogui cannot prove his asylum claim, he cannot meet the higher standard necessary for withholding of removal. *See Ying Chen v. Att'y Gen.*, 676 F.3d 112, 117 (3d Cir. 2011). Consequently, the IJ and BIA correctly denied his request for withholding of removal.

---

[2] In the alternative, the BIA held that the IJ's unable-or-unwilling-to-control finding was supported by substantial evidence. Beavogui does challenge that holding before us. But we do not address it because Beavogui's failure to challenge the unable-or-unwilling-to-control finding before the BIA renders it "unreviewable on appeal." *Sanchez*, 147 F.4th at 352.

[3] To the extent that Beavogui argues the BIA erred in concluding he had failed to establish a well-founded fear of persecution, we disagree. The BIA based its conclusion in part on the IJ's unwilling-or-unable to-control finding which, again, we are unable to review. And the balance of the BIA's reasoning was supported by substantial evidence. Beavogui testified that in the eight years before the hearing, he had neither heard from anyone in Guinea, nor received any information about whether the Forêt Sacré was looking for him.

Finally, the CAT claim. Beavogui has not challenged the BIA's ruling that he forfeited his CAT claim. And the BIA's ruling means Beavogui has not exhausted his CAT claim as required by 8 U.S.C. § 1252(d)(1). *See Sanchez*, 147 F.4th at 352. Because Beavogui failed to exhaust that claim before the BIA, we may not review it now. *See id.*[4]

For these reasons, we will deny the petition for review.

---

[4] Beavogui also argues that the BIA and IJ improperly comingled the credibility and corroboration analyses. But only the IJ made credibility and corroboration determinations. The BIA expressly declined to address these issues, instead assuming Beavogui's credibility for the purpose of evaluating the sufficiency of his evidence, and still concluded that Beavogui failed to show that the IJ erred. So this argument fails too. *See Camara*, 580 F.3d at 201.

In addition, Beavogui's characterization of the proceeding is belied by the record. After the IJ rendered his decision, Beavogui offered to show his scars to the Court and the IJ stated he would "consider" a motion to re-open the record, but Beavogui's counsel declined to do so. CAR 187. Thus, the IJ did not prevent Beavogui from presenting evidence of his scars. His claim that the IJ's questioning reflected that he was biased also lacks merit, as the record does not suggest that the IJ did anything more than question Beavogui for clarity and thereby provided further opportunities for explanation. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003) (holding that IJ who "interjected only to allow [petitioner] to clarify inconsistent responses or to give him the opportunity to respond in further detail" did not violate due process). Far more would have been required to determine that the IJ failed to conduct an impartial hearing. *Cf. Wang v. Att'y Gen*, 423 F.3d 260, 269 (3d Cir. 2005) (determining that IJ's "disparagement" of petitioner and decision "to attack [his] moral character rather than conduct a fair and impartial inquiry" undermined IJ's credibility determination).